[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 02-11890

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2003
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-01419-CV-PAS
and BKC Docket No. 00-16067 BKC-RA

In Re: WORLDWIDE WEB SYSTEMS, INC.,
d.b.a. Teleware Global Corp.,

Debtor.

———————————————————————————————————————

D. OMAR VALDEZ,

Defendant-Appellant,

WORLDSTAR COMMUNICATIONS CORPORATION,

Defendant,

versus

JAMES S. FELTMAN,

Plaintiff-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

**(April 22, 2003)**

Before CARNES, MARCUS, and SUHRHEINRICH[*], Circuit Judges.

MARCUS, Circuit Judge:

This is an appeal from a bankruptcy court order denying a motion to set aside final default judgment entered against Defendants D. Omar Valdez ("Valdez") and Worldstar Communications Corporation ("Worldstar"). The district court affirmed the bankruptcy court's denial, and it is from these orders that Valdez appeals. Worldstar has not appealed to this Court.[1] We agree with the bankruptcy and district courts that Valdez has failed to meet his burden of demonstrating under Fed. R. Civ. P. 60(b)(1) ("Rule 60(b)(1)") that final default judgment should have been set aside for excusable neglect and, accordingly, affirm.

## I.

The relevant facts and procedural history are straightforward. This case arose out of the Chapter 11 bankruptcy proceedings of Worldwide Web Systems, Inc. ("Worldwide"). On August 11, 2000, one month after Worldwide filed a Chapter 11 petition, James S. Feltman ("Feltman") was appointed as the trustee for

---

[*]Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1]Although the bankruptcy court also entered final default judgment against Worldstar and Worldstar subsequently appealed to the district court, all parties stipulated to the dismissal of that appeal.

its estate. Soon thereafter, Feltman filed a complaint against Valdez and Worldstar seeking to recover some $1.7 to $1.8 million that was allegedly paid wrongfully to Valdez and Worldstar within one year of the filing of the Chapter 11 petition.

On August 28, 2000, Valdez was served with a summons and complaint at his last known business address, which was on file with the Florida Secretary of State, by first class U.S. mail and certified mail, return receipt requested.[2] A summons and complaint also were delivered to Michael Schiffrin, Esq., Worldstar's registered agent.[3] Neither Valdez nor Worldstar answered or otherwise responded to the complaint. Not surprisingly, default and final default judgments were entered against them on October 13, 2000, and November 2, 2000, respectively.

Throughout December 2000, Feltman served numerous discovery requests in aid of execution on Valdez and Worldstar. Again, neither party responded to

---

[2]While Valdez concedes that this was a valid method of service of process under the bankruptcy code and that the return receipt was signed, he says that the receipt was not signed by him or anyone purporting to be his agent. Indeed, Valdez claims that he moved permanently from this address prior to the delivery of service of process and was in transit at the time the summons and complaint were received by an unknown individual at that address.

[3]Schiffrin acknowledged service of process on Worldstar, but advised Feltman that he could not accept service of process for Valdez. Nevertheless, he sent the summons and complaint by mail and fax to a forwarding address and fax number provided to him by Valdez.

3

any of these requests. By his own admission, Valdez learned of the final default judgment against him on November 11, 2000. On January 4, 2001, Schiffrin filed a Notice of Appearance on behalf of Valdez and Worldstar, and moved the bankruptcy court on January 8, 2001 to set aside the final default judgment. Valdez argued that the final default judgment should be set aside for excusable neglect pursuant to Rule 60(b)(1) and (b)(6), see Fed. R. Civ. P. 60(b) (1), (6) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (1) mistake, inadvertence, surprise, or excusable neglect . . . [or] (6) any other reason justifying relief from the operation of the judgment.").[4] Notably, Valdez did not challenge personal jurisdiction or sufficiency of service of process under Rule 60(b)(4).

The bankruptcy court conducted a hearing on January 23, 2001 affording Valdez the opportunity to appear and be heard, but Valdez did not appear. The court concluded that Valdez and Worldstar failed to present sufficient evidence to satisfy their burden to set aside the final default judgment. Valdez and Worldstar timely filed Notices of Appeal with the district court and again argued that the

---

[4]Valdez never raised a Rule 60(b)(6) claim in the district court or in this court and, therefore, we will not address that claim.

4

final default judgment should be set aside for excusable neglect pursuant to Rule 60(b)(1). They also raised for the first time the claim that final default judgment should be set aside as void for lack of proper service of process pursuant to Rule 60(b)(4), see Fed. R. Civ. P. 60(b) (4) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void"). Soon thereafter, the district court concluded that Valdez had not met his burden of demonstrating that the bankruptcy court abused its discretion and affirmed the bankruptcy court's decision.

On appeal, Valdez reprises the same arguments he presented to the district court: that Valdez has demonstrated excusable neglect pursuant to Rule 60(b)(1); and that the final default judgment entered against him is void for lack of proper service of process pursuant to Rule 60(b)(4).

**II.**

We will reverse the lower court's denial of a motion to set aside a default judgment only for abuse of discretion, see Fla. Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993) (citing Gibbs v. Air Canada, 810 F.2d 1529, 1537 (11th Cir. 1987) and Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1020 (11th Cir. 1982)), and we have cautioned that "appellant cannot prevail simply

because the [bankruptcy court] properly could have vacated its order." Solaroll Shade & Shelter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1132 (11th Cir. 1986) (citing Fackelman v. Bell, 564 F.2d 734, 736 (5th Cir. 1977)). Instead, to show an abuse of discretion, the "appellant must demonstrate a justification so compelling that the [lower] court was required to vacate its order." Id. However, there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor. See id. (citing Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc., 740 F.2d 1499, 1510-11 (11th Cir.1984)); see also Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401-02 (5th Cir. Unit A Jan. 1981) (discussing Rule 60(b) balancing of the desire to preserve the finality of judgments with the desire that judgments reflect the merits of the case).[5]

## A.

Valdez argues first that the bankruptcy court abused its discretion and the district court erred in failing to reverse the order denying his motion to set aside default final judgment for excusable neglect under Fed. R. Civ. P. 60(b)(1). To establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a defaulting party must show that: "(1) it had a meritorious defense that might have

[5]In Bonner v. City of Prichard, we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. See 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

6

affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." Ehlers, 8 F.3d at 783 (citing E.E.O.C. v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990)).

In this case, Valdez has demonstrated neither excusable neglect, nor an abuse of discretion. In the first place, Valdez has not offered anything resembling a meritorious defense. Valdez inexplicably failed to appear at a hearing set by the court to address his claim that the $1.8 million default judgment should be set aside. Instead, he claims in an affidavit only that his meritorious defense is demonstrated by his Answer and Affirmative Defenses to the Complaint. However, these documents amount to little more than general denials offered only at the highest order of abstraction, and we made clear in Solaroll that a moving party cannot satisfy the burden of showing a meritorious defense simply by "asserting a general denial." 803 F.2d at 1133. We also explained that in order to establish a meritorious defense, the moving party "must make an affirmative showing of a defense that is likely to be successful." Id. (citation omitted). Specifically, Valdez has offered nothing to explain what happened to the money that was transferred, nor anything to show that the large financial transfers were not made to him personally by the debtor.

7

Indeed, other than his general denials, the only evidence Valdez offers is the testimony of his brother, Frank Valdez. Valdez claims the bankruptcy court misinterpreted his brother's testimony as stating that the transfers were made to Valdez himself, whereas the testimony at most indicates that the money was transferred to Worldstar and/or Valdez. After thoroughly reviewing the testimony, we are satisfied that the bankruptcy court reasonably characterized Frank Valdez's testimony as indicating that the money was transferred to Valdez personally.[6]

---

[6]The relevant portion of Frank Valdez's testimony reads as follows:

Q.    The other person . . . who received transfers is Omar Valdez/Worldstar, 1.8 to $1.7 million?

[Frank Valdez].
      Yes, that was the aggregate or the total that -- the other one is a direct accounting from one bank account, and so if you take the transfers total, then that's what it would be.

Q.    What was the purpose of the transfers to Omar Valdez/Worldstar in the amount of 1.8 to $1.7 million?

A.    Well, some of it was -- the small amount of it, I don't remember what the invoice was, it was for some management fees, but the rest of it was the same reason that I took the money out, was to get it out of the corporation so that we would no longer have it to be extorted, and the idea was we needed to return it, like I did.

Q.    So it was transferred to your brother in a corporation he controlled for safekeeping?

A.    That's exactly correct.

Q.    And ultimately the money was never returned?

A.    Unfortunately with him it was never returned, and with great pleading

8

Moreover, even if the testimony also could be read as indicating the money was transferred to Worldstar, a closely held corporation of which Valdez was the principal, Valdez cannot establish a meritorious defense simply by pointing to an alternate interpretation of this testimony. Quite simply, he has failed to offer anything to affirmatively and specifically show that there was a valid defense that would probably change the outcome of the case.

As to the prejudice prong of a Rule 60(b)(1) motion, Valdez says that Feltman sustained virtually no prejudice by his failure to plead or defend prior to the entry of final default judgment, and that the bankruptcy court failed to give the lack of prejudice its proper weight. In particular, Valdez argues that the existence of "excusable neglect" is "primarily governed by the lack of prejudice," and that it is apparent that any neglect on the part of Valdez and his counsel Schiffrin, while

---

on my part, you know, and warnings that this is going to be a problem, it was never returned.

Q.   So just so I'm clear, these payments that we're talking about now to your brother . . . were neither dividends nor payments in the ordinary course of business, they weren't for compensation, they were just transfers to your brother, who was supposed to hold the money so that the alleged extortionist couldn't get it, is that correct?

A.   Partially. Some of it, I don't have the exact invoice, there is an invoice for management fees or consulting fees, but the majority, probably close to the 1.5 figure or 1 point something was for that particular reason.

Section 341 Meeting of Creditors Tr. (August 18, 2000), at 50-52.

9

"perhaps evidencing some carelessness was nevertheless excusable." In support, he cites our decision in Cheney v. Anchor Glass Container Corp., 71 F.3d 848 (11th Cir. 1996), and argues that because there was "virtually no prejudice" and "no evidence that granting Valdez'[s] Motion would adversely [a]ffect the efficient administration of justice," the bankruptcy court abused its discretion in denying his motion to set aside final default judgment.

Valdez is correct that in Cheney we acknowledged that the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) accorded primary importance to the absence of prejudice and to the interest of efficient judicial administration in determining whether the district court had abused its discretion. Cheney, 71 F.3d at 849-850. While the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration are of "primary importance," the Pioneer and Cheney decisions do not alter the fact that a determination of excusable neglect is an equitable one that necessarily involves consideration of all three elements -- a meritorious defense, prejudice, and a good reason for not responding to the complaint -- and not, as Valdez argues, exclusively prejudice. See Ehlers, 8 F.3d at 783; see also Pioneer, 507 U.S. at 395, 113 S. Ct. at 1498 ("[The excusable neglect] determination is at bottom an equitable one, taking account of all relevant

10

circumstances surrounding the party's omission."); Cheney, 71 F.3d at 850 (same).

While the prejudice in this case is not particularly pronounced, we find -- as did the bankruptcy court -- that there is some prejudice to Feltman. See January 23, 2001 Bankr. Court Proceedings Tr. at 38 ("[T]here certainly is some prejudice to the plaintiff in the delay if the default was to be set aside."); see also id. at 24 (Statement of counsel for Feltman) ("[T]he estate has been prejudiced by the failure of Mr. Valdez to previously appear, in that any evidence that we could have obtained from him during the course of the proceeding would have been helpful or could have been helpful to the trustee's efforts to locate other assets and to recover other assets for the estate."). Indeed, if we were to vacate the final default judgment and remand for a trial on the merits, this trial would take place nearly three years after Feltman initially filed the complaint. Moreover, on the facts of this case, we cannot say that the lack of substantial prejudice to the non-moving party so tips the scale in favor of Valdez that we should excuse his failure to make even the barest showing of a meritorious defense or to present a good reason for failing to respond to the complaint.

As to the "good reason" prong of a Rule 60(b)(1) motion, Valdez claims that he learned of the final default judgment on November 11, 2000. It was not until January 4, 2001, however, that Schiffrin entered his appearance on behalf of

11

Worldstar and Valdez, and not until January 8, 2001, that Schiffrin filed a motion to set aside the final default judgment. Valdez has not offered any reason, let alone a "good reason," for this delay.

Moreover, as we've noted, Valdez did not even appear at the bankruptcy court's hearing on his motion to set aside the final default judgment. Instead, counsel for Valdez submitted an affidavit from Valdez that at most says that he just learned of the lawsuit on November 11, 2000.[7] Nothing in Valdez's brief

---

[7]Valdez's affidavit states in full:

1. My name is D. Omar Valdez and I am one of the named Defendants in the above-captioned adversary proceedings.

2. I am over the age of 18 years and I make this Affidavit upon personal knowledge.

3. Allegedly, it appears that the Summons and Notice of Pretrial/Trial in an Adversary Proceeding, together with the Complaint to Recover Preferential Transfers, Fraudulent Transfers and Unlawful Distribution (hereinafter referred to as the "Lawsuit"), were served upon me by mail on August 25, 2000 at 800 Brickell Avenue, Suite 900, Miami, Florida 33131.

4. In fact, I never received the Lawsuit and the first knowledge that I had of its existence was when I was advised that a Default Final Judgment was entered against me on November 11, 2000.

5. I moved permanently from the State of Florida on July 8, 2000, having closed down my business of Worldstar Communications, Inc. on June 16, 2000.

6. Accordingly, on August 25, 2000 (the day the lawsuit was allegedly served upon me by mail) neither myself or my previous business, Worldstar Communications, Inc., were located at or received mail at the business' prior address of 800 Brickell Avenue, Suite 900, Miami, Florida 33131.

7. Additionally, on August 25, 2000, I was virtually unreachable as I was in transit and in fact I was in the process of relocating

12

affidavit provides any basis, let alone a sufficient one, for finding an abuse of discretion.  Accordingly, we affirm the bankruptcy court's denial of Valdez's Rule 60(b)(1) motion to set aside the final default judgment.

**B.**

To the extent Valdez raises the additional claim that final judgment is void for lack of proper service of process under Fed. R. Civ. P. 60(b)(4) ("Rule 60(b)(4)"), because Valdez did not present this issue in his Rule 60(b) motion to the bankruptcy court, sitting as a trial court, he waived it and we will not address it on appeal.  Federal Rule of Bankruptcy Procedure 9024,[8] which incorporates Rule

---

to my present place of residence.
8.  I have a meritorious defense to the Lawsuit and in support of this assertion, I herewith attach hereto and make a part hereof as Exhibit "A", a copy of my Answer and Affirmative Defenses which I propose filing with this Court.

Affidavit of D. Omar Valdez (emphasis omitted).

[8]Bankruptcy Rule 9024 states:

Rule 60 F[ed.] R. Civ. P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

Fed. R. Bankr. P. 9024.

13

60(b)(4), permits a party to seek relief from a void judgment or order. See Fed. R. Civ. P. 60(b)(4) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void."). The burden of proof in a Rule 60(b)(4) motion rests with the defendant. See Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 154 (5th Cir. 1974).

Although we review a district court's Rule 60(b)(4) motion for abuse of discretion, insufficient service of process under Rule 60(b)(4) implicates personal jurisdiction and due process concerns. Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void. See Varnes v. Local 91, Glass Bottle Blower's Ass'n, 674 F.2d 1365, 1368 (11th Cir. 1982) (finding a judgment void under Rule 60(b)(4) where the defendant was not properly served); see also Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding . . . accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the . . . action and [to] afford them an opportunity to present their objections." (citations omitted)).

However, there are limitations on this doctrine. <u>See, e.g.,</u> <u>Harris Corp. v. Nat'l Iranian Radio & Television</u>, 691 F.2d 1344, 1353 n.18 (11th Cir. 1982) (holding that an "objection to service of process does not preserve the issue of personal jurisdiction."). One important limitation is that objections to personal jurisdiction (unlike subject matter jurisdiction) are generally waivable. <u>See</u> <u>Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,</u> 456 U.S. 694, 705, 102 S. Ct. 2099, 2105-06, 72 L. Ed. 2d 492 (1982). The Supreme Court explained this difference in these terms:

> The concepts of subject-matter jurisdiction and personal jurisdiction . . . serve different purposes, and those different purposes affect the legal character of the two requirements.
> . . .
> Subject-matter jurisdiction . . . is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings. . . .
> . . .
> None of this is true with respect to personal jurisdiction. . . . The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. . . . Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.

15

Id. at 701-03, 102 S. Ct. at 2103-05 (citations and internal quotation marks omitted).

Consistent with Bauxites, we have found that a party's right to dispute personal jurisdiction on insufficient service of process grounds is waived if the party fails to assert that objection in his first Rule 12 motion, other initial pleading or general appearance. See Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) (explaining that "[a] party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent."). We have not previously addressed whether our holding in Pardazi is applicable when a party failed to dispute sufficiency of service of process in its first Rule 60(b) motion. However, the Seventh Circuit addressed a similar issue in Swaim v. Moltan Co. -- the failure to allege the lack of in personam jurisdiction -- and concluded that "in personam jurisdictional challenges to default judgments are forfeited if not asserted in a Rule 60(b) motion, if such a motion is made." 73 F.3d 711, 718 (7th Cir. 1996).[9] The

[9]The Sixth Circuit has also addressed this issue in an unpublished opinion. See Ladder Man, Inc. v. Mfr's. Distrib. Servs., Inc., 234 F.3d 1268 (6th Cir. Oct. 31, 2000) (unpublished table decision) (holding that appellant's failure to raise the issue of personal jurisdiction in his Rule 60(b)(4) motion to vacate default judgment "precludes that argument from being raised on appeal" and citing in support cases holding that under Rule 12(h), a party waives the right to contest personal jurisdiction by failing to raise the issue when the party makes its first significant defensive move).

Seventh Circuit explained, "when a party chooses to utilize the attention and limited resources of a district court in a motion under Rule 60(b), we think it just and proper that it be required to put before the district court whatever infirmities support setting aside the default judgment [because it] brings to bear the district court's factfinding function and unique knowledge of the case and maintains the court of appeals' role as a forum for resolving disputed questions of law -- not fact." Id. at 719.

We agree with the reasoning of the Seventh Circuit in Swaim and conclude that when a party asserts a Rule 60(b) challenge to a default judgment, absent a compelling showing that we should make an exception to this rule, see Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360-61 (11th Cir.1984) (enunciating five important exceptions to the general rule that an appellate court will not consider an issue not presented to the trial court), challenges under Rule 60(b)(4) on insufficient service of process grounds are waived if not squarely raised.

Since a bankruptcy court sits as a trial court, "we review the bankruptcy court's findings as if this were an appeal from a trial in the district court." In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993) (citation omitted). We have declined to address issues not raised before the bankruptcy court because an alternate

course would "delay the disposition of bankruptcy cases" and permit a party objecting to the default judgment to "say nothing to the bankruptcy court, await its ruling, bypass that judgment, and for the first time take that objection to the district court." In re Daikin Miami Overseas, Inc., 868 F.2d 1201, 1208 (11th Cir. 1989); see also, e.g., In re Freeman, 956 F.2d 252, 255 (11th Cir. 1992) (declining to consider issues not raised with the bankruptcy court).

Quite simply, we hold that when a party first moves under Rule 60(b) to set aside a default judgment in the bankruptcy court (absent a compelling showing that we should make an exception), the failure to raise a claim under Rule 60(b)(4) for insufficient service of process waives the claim and we will not address it on appeal. Our sister circuits similarly have found that failure to raise a claim in bankruptcy court generally constitutes waiver of the claim. See, e.g., In re Hemingway Transp, Inc., 993 F.2d 915, 935 (1st Cir. 1993) ("[F]ailure to advance the present contention below deprived the bankruptcy court of an opportunity to consider it, thereby waiving the claim." (citation omitted)); In re Kieslich, 258 F.3d 968, 971 (9th Cir. 2001) (holding that "a party waives any objection to a bankruptcy court's discretionary exercise of its jurisdiction over related suits by failing to raise it before the bankruptcy court").

18

Valdez waived his insufficient service of process argument under Rule 60(b)(4) by failing to include it in his Rule 60(b) motion to the bankruptcy court. Before the bankruptcy court, Valdez argued only that the final default judgment should be set aside under Rule 60(b)(1) and (b)(6). Although he mentioned that he failed to receive service of process, he did so solely in the context of demonstrating Rule 60(b)(1) "excusable neglect." He neither referenced "personal jurisdiction" or "due process," nor in any way alluded to Rule 60(b)(4).

Moreover, Valdez has provided us with no compelling reason to make an exception today. In Dean Witter, we explicated five important exceptions to the general rule that an appellate court will refuse to consider an issue not presented to the trial court and raised for the first time on appeal. Thus, an appellate court may consider (1) a pure question of law if the refusal to consider it would result in a miscarriage of justice; (2) an objection not raised in the court below when the appellant had no opportunity to raise the objection; (3) an objection not raised below when there is at stake a substantial interest of justice; (4) an issue not raised in the lower court when the proper resolution is beyond any doubt; and (5) an issue for the first time if the issue presents significant questions of general impact or great public concern. See Daikin, 868 F.2d at 1207 (discussing Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355 (11th Cir.1984)).

19

We can discern none of these exceptions here. First, the question at issue was whether the bankruptcy court abused its discretion in denying the motion to set aside final default judgment. See id. This matter necessarily involves whether the requirements of service of process were met and, as such, includes questions of fact as well as of law. Moreover, after thorough review of this record, there is no miscarriage of justice in this case. Second, Valdez filed a Rule 60(b) motion before the bankruptcy court on subsection (1) and (6) grounds. Plainly, he had a robust opportunity to include subsection (4) objections as well. Third, Valdez argues that a $1.8 million dollar judgment against him without a trial on the merits raises questions of substantial justice. However, as we noted in Daikin, "the 'interests of substantial justice' are generally equated with the vindication of fundamental constitutional rights," rather than a monetary judgment. Id.; see, e.g., Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 286 (5th Cir. 1975) ("[A] healthy regard for the necessity and desirability of having errors corrected at trial rather than on appeal leads us to [consider arguments not raised below] only in exceptional cases where the interest of substantial justice is at stake."). No substantial interests of justice are raised. Fourth, it cannot fairly be said that the issue raised for the first time on appeal here -- one which requires the resolution of factual questions -- places its resolution beyond doubt. See Daikin, 868 F.2d at

20

Finally, we can divine no issue of transcending public importance, such as was found in <u>Dean Witter</u> (which addressed the national policy of denying Cuban nationals access to American dollars to finance allegedly violent acts abroad).

Accordingly, because Valdez failed to raise his Rule 60(b)(4) claim in his Rule 60(b) motion to the bankruptcy court, he has waived it and we will not address it on appeal.

**AFFIRMED.**