[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13402
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-61257-CV-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHIRLEY A. VARMADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2009)

Before BIRCH, CARNES and HULL, Circuit Judges.

PER CURIAM:

Shirley A. Varnado, proceeding pro se, appeals the default judgment entered

against her in an action brought by the government to recover $23,875.84 on a student loan.[1] Varnado contends that the default judgment is void because she did not receive proper service of process. Alternatively, she contends that the district court abused its discretion by denying her motion to set aside the default judgment.

## I.

"Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." In re Worldwide Web Sys., 328 F.3d 1291, 1299 (11th Cir. 2003). In-person delivery of a copy of the summons and complaint is a valid method of service. Fed. R. Civ. P. 4(e)(2)(A); Fla. Stat. § 48.031. During a hearing in the district court, a licensed process server testified that he personally served Varnado. The district court found that the process server's testimony was credible and that Varnado's testimony was "evasive." R1:21 at 4. We review those findings of fact only for clear error. See Mitchell v. Hillsborough County, 468 F.3d 1276, 1282 (11th Cir. 2006).

The process server, Nestor Mendez, testified that he had tried to serve Varnado "many times and nobody answered the door," but he saw lights on in the house and a car in the driveway. Mendez testified that on the morning of January

[1] In the style of this case the defendant/appellant is identified as "Varmado," but during a hearing before the district court, she testified that her name was "Varnado," so we will refer to her by that name in this opinion.

2

30, 2008, he saw Varnado leaving the house. He asked if she was Shirley Varnado, and she ran toward her car in the driveway. Mendez read her the case information and put the summons and complaint on her car as she was starting to drive away. When Varnado drove off, the papers slid off the car. Mendez picked them up, left them at Varnado's front door, and filed a return of service with the district court on January 30, 2008.

Varnado testified that she had not been attempting to evade service. Instead, she often had been away from home caring for her ailing parents in Louisiana. She testified that she had never seen Mendez before the day of the hearing and claimed that she simply found the summons and complaint at her front door. A friend of Varnado's testified that he was with her on the morning of January 30, 2008, and at 8:15 that morning they left her house and drove to the credit union in Miami. He also stated that he had never seen Mendez before the day of the hearing.

The district court heard testimony about the service of process from three witnesses, all of whom were cross-examined. "Where the factfinding resolves a swearing match of witnesses, the resolution will almost never be clear error." United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). The district court recognized that both sides had a motive to "color their testimony" and that "it's up to the Court to determine the believability of the witnesses." R:2:48 at 35.

3

The court correctly stated that if it believed Varnado's testimony that she had never seen Mendez and that process was simply dropped at her front door, then she had not been properly served. See Fed. R. Civ. P. 4; Fla. Stat. § 48.031; Henzel v. Noel, 598 So. 2d 220, 221–23 (Fla. 5th DCA 1992). The district court, however, did not believe that version of events. Nothing in the record suggests that the district court clearly erred by crediting the process server's testimony. Because Varnado was properly served, the district court had personal jurisdiction over her, and the default judgment against her is not void.

## II.

"We reverse the district court's denial of a motion to set aside a default judgment only if the district court abused its discretion in denying the motion." Fla. Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993). "[T]o show an abuse of discretion, the appellant must demonstrate a justification so compelling that the [district] court was required to vacate its order. However, there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." In re Worldwide Web Systems, Inc., 328 F.3d at 1295 (citation and quotation marks omitted).

An order issued by the district court on February 29, 2008 denied Varnado's motion "to strike" the complaint based on improper service of process and gave

Varnado until March 20, 2008 to respond to the complaint. The district court issued another order on March 4, 2008, granting the government's motion to file an amended complaint. The March 4 order instructed Varnado that her response to that complaint still had to be filed by March 20.[2] Varnado failed to file a timely answer to the government's amended complaint, and on March 24 the clerk entered a default against her. On the same day, the district court issued an order giving the government ten days to file a motion for entry of final default judgment or to show cause why the case should not be dismissed for lack of prosecution. The next day the government filed a motion for default judgment. On March 27—two days later— the court issued a final judgment of default.

When the government filed its motion for default judgment, Varnado should have gotten a three-day notice of a pending default judgment. See Fed. R. Civ. P. 55(b)(2) (providing that the party against whom a default judgment is sought "must be served with written notice of the application [for default judgment] at least 3 days before the hearing"); Fla. Physician's Ins. Co., 8 F.3d at 784 ("The party against whom default judgment is sought must be served with written notice at least three days prior to the hearing for default."). No evidentiary hearing was

_____

[2] The government's amended complaint was substantively the same as its original one. The motion to amend specified that the defendant's name was "Shirley Varmado a/k/a Shirley Varnado," and asserted that "either there was a typographical error in Defendant's name or she uses both spellings." R1:22 at 1.

5

conducted in the present case, and the district court entered default judgment against Varnado only two days after the government filed its motion. Cf. Charlton L. Davis & Co., P. C. v. Fedder Data Center, Inc., 556 F.2d 308, 309 (5th Cir. 1977) (The plaintiff's failure to notify [the defendant] of the default motion in violation of Rule 55 provides sufficient reason for [the defendant's] failure to respond to the motion.").[3] Entitlement to the three-day notice, however, may be waived if not raised in the district court. See United States v. $22,640.00, 615 F.2d 356, 359 (5th Cir. 1980)[4] ("The record indicates that in their Motion and Amended Motion to Vacate Order and Final Decree of Forfeiture the appellants did not allege a violation of Rule 55(b)(2). Since this point was raised first on appeal, it is waived, and we accordingly do not consider it.").

In her motion to set aside the default judgment, Varnado did not allege a violation of Rule 55(b)(2) and did not even mention that she had been deprived of the required three-day notice. Construing her pro se appellate brief liberally, she did point out that the district court issued the default judgment two days after the government filed its motion, and she was not given enough time to respond to it

---

[3] Rule 55(b) has been amended to create a seven-day notice requirement effective December 1, 2009, absent contrary Congressional action. See Fed. R. Civ. P. 55(b) (2009).

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

even though the government was given ten days to file its motion. Because she did not raise that argument in the district court, however, she waived it. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed. But, issues not raised below are normally deemed waived.") (citation omitted).

Varnado does and did argue, however, that the district court abused its discretion by denying her motion to set aside the default judgment because she has shown excusable neglect. "To establish . . . excusable neglect under Rule 60(b)(1), a defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." In re Worldwide Web Sys., 328 F.3d at 1295 (quotation marks omitted).

Varnado asserts that she has a meritorious defense because "the loan is in error based on the social security number and the loans records," and the loan is a duplicate of one that she is actually paying. At the hearing to determine whether she had been properly served, she made those same assertions. The district court commented that an incorrect social security number might indicate that she simply

7

put the wrong number on the application but that she actually did take out the loan. The court asked Varnado if she had paperwork to show that the loan was a duplicate and that she was paying on another loan for the same amount. Varnado said she did not have any paperwork because she "went into the database for the federal student loan to get my social security number to prove that—which loan I am paying on, but it's not that loan because it's under the wrong Social Security number and it's a duplicate." R2:48 at 4–5. Following that hearing, the district court issued an order finding that Varnado had been properly served but that "whether the loan is appropriately the debt of Ms. Varnado can be determined [later] as an affirmative defense."[5] R1:21 at 4.

The government did not file a brief in this appeal, so we can only guess what the government thinks about that defense at this point in the proceedings. In the district court, the government asserted its belief that defendant Shirley Varnado was in fact the person who took out the student loan. R1:15 at 1. As support for that assertion, the government attached a loan application, which listed defendant Varnado's address and included a signature similar to the one on Varnado's motion to strike. Id. The government also offered for in camera inspection an investigation report on Varnado that it claimed matched the information appearing

___

[5] On March 13, 2008, the case was transferred to a different district court judge, who issued the default judgment on March 27. See R1:25.

8

on the loan application. With its motion for judgment of default, the government submitted a sworn affidavit from the Department of Education, stating that Varnado owed the government $23,875.84 in loan principal, interest, and costs. The government has never directly addressed Varnado's assertion that the loan is a duplicate.

As for prejudice to the government based on delay, any prejudice is slight because there was only slight delay. The default judgment was issued on March 27, 2008—seven days after the deadline for Varnado's response to the government's amended complaint. Varnado filed a motion to set aside the default judgment and an amended answer on April 7, 2008. She argued that her failure to meet the deadline was excusable because following her father's death her mother suffered a stroke, and she temporarily had to relocate from Florida to Louisiana in order to care for her mother. She also stated that the rural Louisiana mail service was slow in the aftermath of Hurricane Katrina. She pointed out that the government had asked for and received numerous extensions of time but that this was her first request for one. R1:33 at 2.

"The entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations. It is only appropriate where there has been a clear record of delay or contumacious conduct." E. F. Hutton & Co. v. Moffatt, 460

F.2d 284, 285 (5th Cir. 1972) (citations omitted). Here, the defendant was pro se; she was not given proper notice that default judgment would be issued against her; any delay was slight; there was no evidence of willful misconduct or intentionally dilatory tactics; and she advanced what could be liberally construed as a meritorious defense at this early stage of the proceedings. Based on those particular circumstances, the denial of Varnado's motion to set aside the judgment of default was an abuse of discretion.

**VACATED AND REMANDED.**