[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 4, 2011
JOHN LEY
CLERK

No. 08-10682
Non-Argument Calendar
_____

D. C. Docket No. 01-07874-CV-DTKH

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

PAUL R. JOHNSON,
J & J MANAGEMENT CONSULTING,
a.k.a. 1287769 Ontario Inc.,
et al.,

Defendants,

CATERINA JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 4, 2011)

Before TJOFLAT, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

This is a civil enforcement action brought by the Securities and Exchange Commission ("SEC") pursuant to the Securities Act of 1933, 15 U.S.C. § 77t, and Securities Exchange Act of 1934, 15 U.S.C. § 78u. The action commenced on December 12, 2001 when the SEC filed a complaint for injunctive relief and the imposition of civil penalties. The gravamen of the SEC's complaint was that the defendants, Paul R. Johnson, John Cook II, Emanuele Cardaci, and Scott Schoenbauer, were engaging in the fraudulent offer and sale of unregistered securities issued by Link Express Delivery Solutions, Inc. ("Link"), a South Florida package delivery company. Johnson founded Link and was its majority shareholder and president. Johnson's mother, Caterina Johnson, was named in the complaint and sued as a "relief defendant." She owned J&J Management Consulting, a/k/a 1287769 Ontario, Inc. ("J&J"), also a relief defendant. Paul R. Johnson diverted a portion of the proceeds, in excess of $1.2 million, to Caterina Johnson both directly and through J & J over whose bank accounts she had signatory authority.

On March 6, 2002, Paul R. Johnson moved the district court to stay proceedings in the case as to him because a Southern District of Florida grand jury

2

had returned a 35-count indictment on January 29, 2002, charging him with offenses related to the allegations of the SEC's complaint for civil enforcement.[1] The district court granted his motion on March 27, 2002; meanwhile, the case proceeded against the remaining defendants, Cook, Cardaci, and Schoenbauer, and the relief defendants, Caterina Johnson and J & J.

The SEC's claims against the four defendants and the relief defendant J & J have been resolved via final judgment and are not before us. Only Caterina Johnson's case is here. She appeals the default judgment the district court entered against her, $1.2 million in disgorgement plus $30,180 in interest. Her appeal raises two issues: (1) whether the district court abused its discretion in denying her motion to set aside the default judgment; and (2) whether the judgment that Paul R. Johnson committed the alleged fraud and has been required to disgorge more than $1.5 million in illicit proceeds constituted an adequate predicate for the default judgment against her.

The procedural history of Caterina Johnson's case materially informed the district court's exercise of its discretion. We accordingly begin with that history,

---

[1] The indictment charged conspiracy, in violation of 18 U.S.C. § 371, to commit securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and related offenses, including perjury before the grand jury and the court, in violation of 18 U.S.C. 1623(a). Cook was charged as a coconspirator and as a codefendant in substantive securities fraud offenses. He was acquitted following a joint trial with Johnson.

then turn to the merits of this appeal.

## I.

On March 28, 2002, the clerk of the district court entered a default against Caterina Johnson pursuant to Rule 55(a) of the Federal Rules of Civil Procedure for failing to "appear, answer or otherwise plead to the complaint . . . within the time required by law."[2] On May 17, 2002, the district court entered a "Default Judgement of Disgorgement as to Relief Defendants [J&J] and Caterina Johnson."[3] The judgment ordered as follows: "Relief Defendants shall pay disgorgement representing their gain from the conduct alleged in the complaint plus prejudgment interest thereon. The amount of disgorgement shall be later determined by the Court upon the SEC's motion following due notice of hearing, and evidentiary hearing, held to determine the amount." On June 27, 2002, the SEC moved the district court to schedule an evidentiary hearing to set the amount of disgorgement as to relief defendants. The court granted the motion on July 15, 2002; the

---

[2] Rule 55(a), Entering a Default, states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk [of the district court] must enter the party's default." The proof of service the SEC filed with the district court on December 28, 2001, established that Caterina Johnson had been served with the complaint prior to that date, and the record disclosed that prior to March 28, 2002, she had not filed a pleading or otherwise responded to the complaint.

[3] Although the clerk of the district court had not entered a default against J&J, that relief defendant had not appeared in the case and the SEC had moved the court to enter a default judgment against both relief defendants.

evidentiary hearing would be held before a magistrate judge on August 27, 2002.

On August 22, the SEC presented the court with a memorandum in support of its June 27 motion to set the amount of disgorgement. Attached to the memorandum was an affidavit of an SEC staff accountant who had examined the business and bank records of Link, Paul R. Johnson, and the relief defendants. According to the accountant, those records demonstrate[d] that Caterina Johnson directly received approximately $1.2 million in Link investor funds through accounts maintained by J & J and Defendant Paul Johnson. The records further showed, excluding disbursements to Caterina Johnson, that J & J retained approximately $1,640,000 in Link investor funds. The SEC therefore asked the court to "order Caterina Johnson to disgorge $1.2 million and her company, J&J, $1,640,000."

On August 23, 2002, the relief defendants, represented by Caterina Johnson,[4] moved the district court to stay further proceedings against them until the criminal case against Paul R. Johnson concluded[5] or, alternatively, to continue the disgorgement hearing so they could employ counsel, "obtain discovery [and] file

---

[4] Johnson was not appearing as a lawyer. Rather, she was appearing *pro se* on behalf of herself and the other relief defendant.

[5] The motion represented that Paul R. Johnson would then be available to testify in their defense of the allegations of the SEC's complaint (assuming that the court vacated the default entered on March 28, 2002, which operated as the relief defendants admission that violations of the securities laws alleged in the complaint had in fact occurred as alleged).

5

challenges to the 'default'" and the default judgment. Their motion represented that they had "an 'absolute' defense" to the allegations of the complaint. The magistrate judge designated to hold the disgorgement hearing denied the motion in an order entered on August 27. The order stated that the motion was "simply a delay tactic," that the relief defendants had "presented absolutely no evidence to justify a stay of any proceedings as to them." In a separate order entered the same day, the magistrate judge rescheduled the disgorgement hearing for October 22, 2002. On October 8, due to a scheduling conflict, he reset the hearing for November 22, 2002.

On September 5, 2002, the SEC moved the court to issue an order requiring Caterina Johnson to provide a sworn accounting. On October 17, while the motion was pending, the SEC noticed her deposition for November 12 at the U.S. Attorney's office in Detroit, Michigan.[6] She objected to that date and requested the SEC to provide her with a list of dates during the next month or two so she could pick an "acceptable date." The SEC responded by informing her by letter that the deposition would have to take place before November 22, and asking her to confirm, by October 25, her availability on November 7, 9, or 12. She did not respond, so the SEC noticed her deposition for November 12 at the U.S. Attorney's

---

[6] The office was about nine miles from Caterina Johnson's residence in Windsor, Ontario.

office in Detroit.  Anticipating that Johnson would not appear, the SEC, on October 31, moved the district court to enter an order requiring her to appear for that deposition.  Meanwhile, on October 29, the district court entered an order granting the SEC's September 5 motion to compel Caterina Johnson to provide a sworn accounting.  The court directed her to file the accounting "no later than Friday, November 15, 2002, and that her failure to do so "may result in adverse sanctions."

On November 4, the magistrate judge ordered Caterina Johnson to respond to the SEC's October 31 motion "on or before 12:00 noon, Thursday, November 7."  On November 5, she mailed her response.[7]  In it she stated that she had no objection to being deposed but could not give the SEC a firm deposition date until she "was able to consult with associates for their opinion and legal guidance."  Meanwhile, on November 3, she mailed two motions to the court: "Relief Defendants' Motion to Set Aside Default Judgments,"[8] and "Relief Defendants'

---

[7] According to the case docket sheet, the court (and presumably the SEC) received the response the following day.

[8] The style of the motion referred to "default judgments."  What the motion actually sought was the vacation of the defaults entered by the clerk of the court pursuant to Fed. R. Civ. P. 55(c) on March 28, 2002, so that the relief defendants could answer the complaint's allegations.  *See* Fed. R. Civ. P. 55(c) (The court may set aside an entry of default for good cause.).  Although the district court had entered a default judgment of disgorgement on May 17, 2002, it had not yet determined the amount of the disgorgement; therefore, the default judgment was not a judgment that finally adjudicated the SEC's claims against the relief defendants.

Emergency Motion to Have Disgorgement Hearing Canceled or Grant a Stay."[9]

The first motion asserted that the relief defendants had "a bona fide defense against

the allegations in the complaint" and asked the court to set aside the defaults "so

that they can begin to promptly take steps to file pleadings and prepare to defend

themselves against the allegations being made." The second motion asked the

court to "cancel the Disgorgement Hearing or in the alternative, grant a 'stay' for a

minimum of 90 days."

On November 7, the magistrate judge ordered Caterina Johnson to appear

for deposition on November 12 in Detroit. The next day, the district court denied

the relief defendants' motion to set aside what she had labeled "default

judgments." The court treated the motion as having been brought pursuant to Rule

55(c) of the Federal Rules of Civil Procedure, i.e., as seeking the vacation of the

defaults, not default judgments, because the motion employed the "for good cause"

standard for "sitting] aside the entry of a default" by the clerk of the court, instead

of one of the standards for "sitting] aside a default judgment."[10] The court found

---

[9] As was the case with the relief defendants' August 23 motion, Caterina Johnson purported to represent both relief defendants.

[10] Rule 55(c), Setting Aside a Default or a Default Judgment, states: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 60(b), authorizes the district court, "[o]n motion and just terms [to] relieve a party . . . from a final judgment" for any of the reasons set out in Rule 60(b)'s six subsections.

8

no "good cause" in any of the grounds stated in the motion. In addition, the relief defendants showed "no good cause" for their delay in bringing the motion. They were clearly on notice that the court's determination on amount of disgorgement was proceeding to evidentiary hearing as early as July 2002, when the matter was originally noticed for hearing, and yet waited until November 2002, to bring this motion.

Caterina Johnson failed to appear for deposition at the U.S. Attorney's office in Detroit on November 12 as required by the magistrate judge's order of November 7, so, on November 13, the SEC applied to the magistrate judge for an order requiring her to show why she should not be held in contempt for such failure. On November 15, the magistrate judge issued an order setting a show cause hearing for November 22, 2002, the day previously set for the evidentiary hearing on disgorgement. Also that day, he issued an order denying the relief defendants' November 3 motion seeking the cancellation of the November 22 evidentiary hearing on disgorgement or a stay of further proceedings.

On November 18, the SEC moved the district court pursuant to Rule 37 of the Federal Rules of Civil Procedure for sanctions against Caterina Johnson for failing to appear for deposition on November 12 and to file the required accounting with the court by November 15. On November 19, the magistrate judge issued an

9

order stating that the motion would be heard on November 22 "in conjunction with" the show cause hearing (ordered on November 15) and the evidentiary hearing on disgorgement.

After receiving the magistrate judge's November 15 order denying the relief defendants' November 3 motion seeking the cancellation of the November 22 evidentiary hearing on disgorgement and a stay of further proceedings, Caterina Johnson, on November 18, mailed to the district court and the SEC three motions.[11] The first motion, "Relief Defendant's Emergency Motion to Appeal Magistrate's Order and Other Relief Prior to Filing with Appellate Court," was dated November 11 and asked the district court to reverse the magistrate judge's November 7 order requiring her to appear for deposition in Detroit on November 12. The second motion, "Relief Defendant's Emergency Motion for District Court to Reconsider Orders Prior to Filing of Appeal with 11th Circuit Court of Appeals," was dated November 13 and asked the district court to grant Caterina an "extension[ ] to the 'Order[ ] to Compel Sworn Accounting' [and] temporarily cancel/stay the Disgorgement Hearing currently set for November 22d of 2002." The third motion, "Relief Defendant's Emergency Motion Advising Court of: Inability to Attend Hearing, Notice of Filing Appeal, Etc.," was dated November 18 and

---

[11] The motions were filed on her behalf only, i.e., she was not moving the court on behalf of relief defendant J&J.

10

requested "a Stay of all proceedings, including the upcoming 'Hearing' . . . for a minimum of 21 days, so that C. Johnson may properly prepare and file appropriate Appellant Pleadings."

The hearing on disgorgement and SEC's application for Rule 37 sanctions went forward on November 22 as scheduled. As to the disgorgement issue, the magistrate judge issued a Report and Recommendation recommending that the district court enter final judgments against Caterina Johnson in the sum of $1.2 million plus interest of $30,180 and against J & J in the sum of $1.64 million plus interest of $41,426. As to sanctions, the magistrate judge recommended that the district court preclude Caterina Johnson from "filing any pleadings in this case until such time as she has provided the sworn accounting to the SEC in accordance with [the court's] previous Orders." On February 26, 2003, the district court entered a final judgment of disgorgement against Caterina Johnson and J & J in the amounts recommended by the magistrate judge.

On October 31, 2003, the jury in Paul R. Johnson's criminal case found him guilty on 28 of the charges contained in the 35-count indictment, and on April 21, 2004, the district court sentenced him to concurrent prison terms totaling 240 months. He appealed his convictions and sentence to this court.[12]

---

[12] Appeal No. 8-10473. We dismissed the appeal on March 16, 2009 for lack of prosecution.

On July 30, 2004, Caterina Johnson filed three motions with the district court: (1) motion for reconsideration of its order denying her motion to set aside default; (2) motion to vacate default judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure; and (3) motion for the appointment of counsel. The district court denied these motions in an order entered on February 1, 2005.

On August 21, 2006, the district court entered a partial summary judgment against Paul R. Johnson, finding that he had engaged in the alleged securities fraud and reserving for subsequent adjudication the amount of disgorgement he would be required to make. The district court adjudicated that amount and on June 21, 2007, entered a final judgment of disgorgement against Paul R. Johnson in the amount of $1,505,850 plus interest.

Caterina Johnson filed her notice of appeal on February 11, 2008, after the district court disposed of the remaining matters pending in the case.[13] We turn now to her arguments concerning the district court's rulings on her motion to set aside

---

[13] On December 5, 2007, the district court entered two orders that set the disgorgement awards against Cook and Cardaci. On April 10, 2008, the district court entered an order vacating the December 5 orders, thus terminating the case with respect to all SEC claims against all defendants and relief defendants. An administrative panel of this court, determining whether this court has jurisdiction of Caterina Johnson's appeal under 28 U.S.C. § 1291, subsequently ruled that the April 10 order rendered Caterina Johnson's notice of appeal, which had been filed in the interim, timely.

default.[14]

## II.

## A.

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the clerk of the district court must enter a "default" when a party against whom relief is sought fails to "plead or otherwise defend" the claim. In this case, Caterina Johnson failed to answer the SEC's complaint; hence, the clerk entered a default against her on March 28, 2002.

A default may be set aside for "good cause." Fed. R. Civ. P. 55(c). "'Good cause' is a mutable standard, varying from situation to situation." *Companions Interamericana Export-Import, S.A. v. Companions Domincana*, 88 F.3d 948, 951 (11th Cir. 1996). In determining whether "good cause" has been shown, the courts have considered the following: (a) whether the default was culpable or willful; (b) whether setting it aside would prejudice the adversary, (c) whether the defaulting party presents a meritorious defense; (d) whether there was significant financial loss to the defaulting party; and (e) whether the defaulting party acted promptly to correct the default. *Id.* If a "party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court

---

[14] We review the district court's denial of a motion to set aside a default for abuse of discretion. *In re Worldwide Web SYS., Inc.*, 328 F. 3d 1291, 1295 (11th Cir. 2003).

need make no other findings in denying relief." *Id.* at 951-52. Moreover, when "a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful." *Id.* at 952.

The district court found no good cause in any of the grounds in Caterina Johnson's motion to set aside the default. Among other things, no good cause was shown for the delay in filing the motion—221 days from the entry of the default—and Caterina Johnson waited until the disgorgement hearing had been scheduled to file the motion. We find no error in the court's good cause findings, and thus affirm its decision to deny the motion.

### B.

Rule 55(c) provides that "[t]he court . . . may set aside the entry of a default judgement under Rule 60(b)." Caterina Johnson contends that the court should have set aside the default judgment entered against her pursuant to Rule 60(b)(1), which states: "On motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . . (6) any other reason that justifies relief."[15]

Caterina Johnson argues that the district court erred in entering a default

---

[15] Subsections (1) and (4) are the only subsections of Rule 60(b) that conceivable could apply here. Subsection (1) is inapplicable because there was no mistake, inadvertence or surprise, and there was no excusable neglect for the reasons the district court found for not setting aside the default for good cause.

judgment against her while the proceedings against Paul R. Johnson were stayed and the SEC's allegations against him had yet to be proven. In other words, the entry of the judgment against him after the default judgment had been entered against her somehow renders the judgment against her unenforceable.

Caterina Johnson cites *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499 (11th Cir. 1984), for the proposition that, in a case where the liability of one defendant depends on the liability of another, a default judgment should not be entered against the first until there has been an adjudication of the liability of the second. Appellant's Br. at 50-51. *Gulf Coast Fans* states only that it is sound policy, when "defendants are similarly situated," that "judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Id.* at 1512. Here, of course, Paul R. Johnson did not prevail on the merits; judgment was entered against him, too. Thus, even if Caterina Johnson may have an argument based on *Gulf Coast Fans* for withholding judgment against her until judgment had been entered against Paul R. Johnson, the basis for that argument evaporated once judgment was entered against him. Remanding her case to the district court to satisfy *Gulf Coast Fans* would be a pointless exercise, as there now exists a predicate judgment against her as a relief defendant.

15

AFFIRMED.