[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13380
_____

D.C. Docket No. 0:09-cv-60756-JIC


GLOBAL AEROSPACE, INC.,

                                                    Plaintiff - Appellee,

versus

PLATINUM JET MANAGEMENT, LLC,

                                                    Defendant - Appellant,

MICHAEL BRASSINGTON, et al.,

                                                    Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 17, 2012)

Before CARNES, BARKETT and HILL, Circuit Judges.

PER CURIAM:

Global Aerospace, Inc. ("Global"), the managing agent of a pool of three insurance companies, issued an insurance policy to Platinum Jet Management, LLC ("Platinum Jet"), a private charter airline service.   In 2005, an airplane operated by Platinum Jet crashed during takeoff and Platinum Jet submitted insurance claims directly to Global.   Global investigated the crash, coordinated Platinum Jet's defense, and negotiated settlements.   In January 2009, a federal grand jury indicted Platinum Jet's principals and others for violating laws that regulated the operation and maintenance of Platinum Jet's airplanes, including the one involved in the crash.[1]

Upon discovering the indictment, Global sued Platinum Jet for (1) a declaration of non-coverage; and (2) breaching the insurance policy, for which Global sought to recover the expenses and settlements that Global spent defending Platinum Jet, which totaled approximately $20 million.   Global alleged in its complaint that Platinum Jet, along with its principals and others, conspired "to impede Global's investigative efforts for the purpose of obtaining insurance coverage benefits."   Platinum Jet failed to timely respond to the pleadings and the court entered default against Platinum Jet.   See Fed. R. Civ. P. 55(a).   Platinum Jet moved to set aside the default and to dismiss the case for lack of subject-matter

---

[1] In the criminal trial, Platinum Jet's principals were ultimately found guilty.

2

jurisdiction.   The district court denied both motions and granted Global's motion

for default judgment that provided declaratory relief and recovery of the

approximately $20 million in crash-related expenses.

Platinum Jet now appeals the district court's denial of (1) its motion to dismiss

Global's complaint for lack of subject-matter jurisdiction; and (2) its motion to

vacate the clerk's entry of default, arguing that it had good cause for the delay in

responding, see Fed. R. Civ. P. 55(c).

## II. Discussion

We first address whether the district court correctly ruled that it had

subject-matter jurisdiction.   We review de novo a district court's denial of a Rule

12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.   Sinaltrainal v.

Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).   However, we review the

district court's jurisdictional fact-findings for clear error, upholding them so long as

they are "plausible in light of the record viewed in its entirety."   Carmichael v.

Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279-80 (11th Cir. 2009)

(citations and quotations omitted).   We find no error in the district court's ruling.

Platinum Jet argues that Global did not suffer an injury in fact required for

standing because Global sued only in its own name, without joining the insurance

companies, when Global itself did not suffer any monetary injuries.   See Lujan v.

3

Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (requiring plaintiffs to suffer an actual and concrete injury in fact to have constitutional standing).[2]

Notwithstanding that Global itself did not suffer any monetary losses, we hold that Global did have standing to seek a declaratory judgment that it no longer had any obligation to cover Platinum Jet.   Platinum Jet does not dispute that Global directed and controlled the insurance actions with respect to Platinum Jet's insurance claims.   Thus, Global was entitled to seek a declaratory judgment that it no longer had any obligation in reference thereto.

Regarding the claim that Platinum Jet breached the policy of insurance, we find no error in the district court's analysis that Global had representational standing and in effect filed suit on behalf of its insurance company principals to recover their monetary damages.   Federal Rule of Civil Procedure 17(a) explicitly provides that a "a party with whom or in whose name a contract has been made for another's benefit" to be a "real party in interest" and therefore can "sue in their own name[] without joining the person for whose benefit the action is brought[.]"   An agent

---

[2] By relying on depositions that are extrinsic from the pleadings, Platinum Jet makes a factual challenge to the court's subject-matter jurisdiction.   See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).   Under a factual attack, a court is permitted to look beyond the pleadings to evaluate the merits of the jurisdictional claims, despite the existence of disputed material facts.   See id.   The district court here thus was asked to base its ruling not just on the pleadings, but also the deposition testimony, insurance policy, and the agreement between Global and the pool of underwriters (the "Pooling Agreement").

"who acted as an agent during the course of [a] transaction involved in the litigation, may sue for damages suffered by the principal." Corp. of the President of the Church of Jesus Christ of Latter Day Saints v. Env't Protection Comm'n of Hillsborough Co., 837 F. Supp. 413, 415 (M.D. Fla. 1993) (citing Mitsui & Co. (USA), Inc. v. Puerto Rico Water Resources Authority, 528 F. Supp. 768, 776 (D.P.R. 1981)).[3]

Under these principles, we agree that Global has representative standing to seek monetary damages against Platinum Jet for breaching the policy. Platinum Jet does not dispute that the insurance companies suffered an injury in fact by funding the bank accounts that Global used to pay for crash-related expenses. In the Pooling Agreement, the insurance companies designated Global as their agent and authorized Global to perform a number of tasks on their behalf, including issuing contracts, signing documents, handling claims, receiving funds, and litigating.[4]

---

[3] The court in Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc., similarly noted this principle, citing Restatement (Second) of Agency § 364 (1957), comment (d), which explains that an agent may sue in his own name, based on a party's performance made to an agent if:

> [i]t may be inferred, from business customs, that the other party to a contract has agreed with the agent to pay the purchase price to the agent, and not to the principal in person or to any other agent of the principal. . . . In such cases, the agent can properly maintain an action in his own name.

630 F.2d 250, 258 n.6 (5th Cir. 1980).

[4] For example, the Pooling Agreement authorized Global, in part, to:

5

Global contracted with Platinum Jet in its own name, and Platinum Jet directed its actions specifically to Global.   For providing these services, Global received remuneration and a bonus based on Global's performance in administering each policy.   Global's complaint highlighted this relationship with the insurance companies, stating that "Global is the agent and manager for a group of underwriters who provided insurance to Platinum Jet for liability arising from the crash."

As the district court found, in accordance with this authority:

Global issued the insurance contract to Platinum Jet, and signed the contract in its own name on behalf of its principals. The Policy stated that it was issued through Global . . . included Global's logo on every page, . . . and stated that it could not be amended without Global's consent. . . . Further, after issuing the Policy, Global consistently held itself out as the managing agent for the insurers and defended and settled claims with Platinum Jet's knowledge and consent.

(e) sign, complete, issue and deliver slips, endorsements, policies and all other documents . . .; . . .

(i) enforce against third persons all rights which may accrue to the Insurer . . .; . . .

(l) commence proceedings in and appear for and represent the Insurers before any court or tribunal whatsoever or arbitration and to appoint and employ any counsel and legal or other professional advisers or representatives and to pay them such charges, fees and expenses as either Agent may think necessary or just to appropriate and to sign any agreement to be bound by any award made . . . and to withdraw from or settle or compromise any proceedings in any such court . . . as the relevant Agent shall think fit;

(m) demand, recover and receive from every person, firm or corporation liable to pay or deliver the same all monies, securities, chattels, goods and property which the Insurers may from time to time be entitled to demand or receive in connection with the Business and to give and sign effectual receipts and other discharges for the same respectively[.]

6

Platinum Jet never questioned Global's authority as the insurance companies' designated agent and never objected to Global coordinating Platinum Jet's defense after the crash.   We find no error in the district court's determination that Global has standing to bring a claim for monetary damages on behalf of the underlying insurers as their agent.

Turning to Platinum Jet's remaining claim, we determine that the district court did not abuse its discretion in denying the motion to set aside the default.   To set aside a default, "the appellant must demonstrate a justification so compelling that the [lower] court was required to vacate its order."   In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1295 (11th Cir. 2003) (citations and quotations omitted). "[An] appellant cannot prevail simply because the [lower court] properly could have vacated its order. . . . Instead, to show an abuse of discretion, the appellant must demonstrate a justification so compelling that the [lower] court was required to vacate its order."   Id. (citations and quotations omitted).   Under this standard, we find no abuse of discretion.

**AFFIRMED.**