**In re Christopher Warren MATHIS and Paula Kay Mathis, Debtors.**

**River City Bank, Plaintiff,**

v.

**Christopher Warren Mathis and Paula Kay Mathis, Defendants.**

**Bankruptcy No. 10–43028–MGD.**
**Adversary No. 11–04023–MGD.**

United States Bankruptcy Court, N.D. Georgia, Rome Division.

Jan. 27, 2012.

Thomas D. Richardson, Thomas D. Richardson, Brinson, Askew, Berry, et al., Rome, GA, for Plaintiff.

Ana Marcela Rountree, Rountree Law Firm, Dallas, GA, for Defendants.

### ORDER GRANTING DEBTORS' MOTION TO SET ASIDE DEFAULT JUDGMENT

MARY GRACE DIEHL, Bankruptcy Judge.

The default judgment at issue in this case denies Debtors' discharges and thus involves the central issue in a Chapter 7 case. While Debtors had retained counsel in the bankruptcy case, originally filed as a Chapter 12 case, that counsel notified Debtors of his intent to withdraw prior to the date on which an answer in this adversary proceeding was due. Debtors failed to timely answer the Complaint. Plaintiff River City Bank ("Plaintiff") sought the entry of a default by the clerk, and default was entered. Plaintiff then filed a Motion for Default Judgment and scheduled the matter for hearing. (Docket No. 12). The hearing notice, served on the pro se debtors, included a response date of October 28, 2011. Plaintiff then withdrew the notice of hearing two weeks before the response date. Debtors obtained counsel

and filed a Response to the Motion for Default Judgment (Docket No. 15) and an Answer (Docket No. 16) on October 28, 2011.[1] A Default Judgement was entered by the Court on October 28, 2011, and Debtors timely moved to set aside the Default Judgment under Federal Rule of Bankruptcy Procedure 9024, which incorporates Rule 60 of the Federal Rules of Civil Procedure. As set forth in more detail below, Debtors' motion is granted on the grounds set forth in Rule 60(b).

## FACTUAL AND PROCEDURAL HISTORY

Christopher Warren Mathis and Paula Kay Mathis ("Debtors") filed their petition for relief under Chapter 12 of the Bankruptcy Code on August 2, 2010. After failing to confirm a Chapter 12 plan, and on motion by the Chapter 12 Trustee, the case was converted to Chapter 7 on January 19, 2011. Plaintiff commenced this adversary proceeding by filing a Complaint on April 18, 2011, seeking a denial of Debtors' discharge under 11 U.S.C. § 727. The certificate of service shows that the complaint and summons were properly served on Debtors and James H. Bone, counsel for Debtors in the underlying bankruptcy case.[2] The summons required an answer or motion to be filed on or before May 18, 2011. Mr. Bone never appeared as Debtors' counsel of record in this adversary proceeding.

On May 23, 2011, Mr. Bone filed a motion to withdraw as counsel of record in Debtors' underlying bankruptcy case and in the two other adversary proceedings in which he had appeared. Debtors did not oppose or otherwise respond to this motion. Having never appeared as counsel of record in this adversary proceeding, Mr. Bone did not file a motion to withdraw in it. On June 15, 2011, the Court entered an order allowing Mr. Bone to withdraw as Debtors' counsel of record in the other cases. (Bankruptcy Case No. 10–43028–MGD (Docket No. 181)).

No responsive pleading was timely filed by or on behalf of Debtors to Plaintiff's Complaint. On July 27, 2011, Plaintiff served and filed a request for entry of default, and the clerk of court properly entered default in accordance with Fed. R. Bankr.P. 7055. (Docket No. 8). Though served with Plaintiff's request, Debtors did not respond. When Plaintiff did not file a motion for default judgment, the Court entered an order on September 14, 2011 directing Plaintiff to file a motion for default judgment within 21 days. (Docket No. 10). Plaintiff filed its Motion for Default Judgment on September 28, 2011 and served the motion and a notice of hearing on Debtors. (Docket No. 12). The notice of hearing informed Debtors that a hearing would be held on November 2, 2011 and that Debtors had until October 28, 2011 to respond. (Docket No. 12). Plaintiff withdrew its notice of hearing on October 13, 2011, and the matter was removed from the November 2, 2011 calendar. (Docket No. 13).

At an October 19, 2011 hearing on another adversary proceeding involving Debtors (*Abbasi v. Mathis*, Adversary Proceeding No. 11–4001–MGD), Debtor C.W. Mathis and counsel for Plaintiff in this case were both present. The Court

---

1. These pleadings were filed electronically and after the close of business on October 28, 2011 and were not available to the Court prior to the entry of its Order Granting Plaintiff's Motion for Default Judgment of the same date.

2. Mr. Bone also appeared as counsel of record and filed answers on behalf of Debtors in *Abbasi v. Mathis*, Adversary Proceeding No. 11–4001–MGD (Docket No. 5) and *Vann v. Mathis*, Adversary Proceeding No. 11–4017–MGD (Docket No. 5).

inquired about the status of this case (i.e., *River City Bank v. Mathis*) at that hearing. Debtor C.W. Mathis acknowledged service of the Motion for Default Judgment. He also informed the Court of his unsuccessful attempts to hire counsel. Counsel for Plaintiff then informed the Court and Debtors that he had withdrawn the notice of hearing and hearing date for the Motion for Default Judgment.

The Court entered an order granting Plaintiff's Motion for Default Judgment on October 28, 2011, after the time for response had expired under Local Rule 7007–1. (Docket No. 17). (Though signed on October 28, a Friday, this Order was not docketed by the Clerk's office until Monday, October 31, 2011). An order granting Default Judgment in favor of Plaintiff was entered contemporaneously. (Docket No. 18). Also on October 28, 2011, Debtors filed a Response to Plaintiff's Motion for Default Judgment and an Answer to Plaintiff's Complaint. (Docket Nos. 15, 16). Debtors' Response and Answer were filed after the close of business on October 28, 2011, after the Court had granted Plaintiff's Motion for Default Judgment.

Then, on November 14, 2011, Debtors filed their Motion To Vacate And Set Aside The Default Judgment And Reconsider The Order Granting Plaintiff's Motion For Default Judgment ("Motion"). (Docket No. 21). Plaintiff filed a Response on November 28, 2011. (Docket No. 22). And Debtors filed an Amended Motion on December 9, 2011. (Docket No. 23).

### DISCUSSION OF LAW

Debtors argue that the default judgment should be set aside under Rule 60(b) for excusable neglect or for other reasons justifying relief. Taking into account all the relevant circumstances, Debtors are entitled to have the default judgment set aside for excusable neglect. Setting aside the default judgment serves the strong judicial policy of adjudicating cases on their merits.

### A. Debtors are entitled to relief under Federal Rule of Civil Procedure 60(b)

 Two competing judicial policies surround default judgments: preserving the finality of judgments and adjudicating cases on their merits. *Valdez v. Feltman* (*In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir.2003)). Under the strong judicial policy of adjudicating cases on their merits, courts view default judgments with disfavor. *Id.* This important policy has been consistently noted by the Eleventh Circuit. *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 400–403 (5th Cir. 1981).[3] Though the penalty of default serves to enforce the orderly, efficient administration of judicial proceedings, doing justice in particular cases often requires setting aside a default judgment. *Id.* at 401; 10A Charles Alan Wright et al., Federal Practice And Procedure § 2693 (3d ed. 2011). This is especially so when substantive rights are involved. *Id.* Whether, under the facts of a particular case, the preference for adjudication on the merits outweighs the need for preservation of finality is left to the sound discretion of the district court. *Seven Elves*, 635 at 402; *Advanced Estimating System, Inc. v. Riney*, 77 F.3d 1322, 1325 (11th Cir. 1996).

---

**3.** This case is binding in the Eleventh Circuit because it was entered before the former Fifth Circuit Court of Appeals split into the current Fifth and Eleventh Circuits. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207–08 (11th Cir.1981) (holding that orders entered by the Fifth Circuit before close of business on September 30, 1981 are binding in the Eleventh Circuit).

Against this backdrop of competing policies, Rule 55(c) of the Federal Rules of Civil Procedure[4] provides that a default judgment may be set aside under Rule 60(b). Rule 60(b) of the Federal Rules of Civil Procedure[5] provides that relief from a final judgment may be obtained for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).

Debtors' amended Motion seeks to have the default judgment set aside under Rule 60(b)(1) (mistake, inadvertence, or excusable neglect) or 60(b)(6) (any other reason justifying relief).

 The standard for setting aside a default judgment for excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (ruling that inadvertence, mistake, or carelessness can constitute excusable neglect). Factors considered when making this de-

termination include whether (1) the nonmoving party is prejudiced; (2) the length of the delay and its effect on judicial proceedings; (3) the reason for the delay; and (4) whether the moving party acted in good faith. *Id.* at 395, 113 S.C.t 1489. In applying the *Pioneer* standard, the Eleventh Circuit has required a movant to show (1) a meritorious defense that might affect the outcome; (2) a lack of prejudice to the nonmoving party; and (3) a good reason for the default. *Valdez*, 328 F.3d at 1295.

 The standard for setting aside a default judgment under Rule 60(b)(6) is a showing of exceptional circumstances. *SEC*, 241 Fed.Appx. at 662–63. Debtors make no such showing here, as attorney or party negligence in timely filing an answer does not constitute an exceptional showing. *Id.* (*citing Solaroll Shade & Shutter Corp. v. Bio–Energy Systems, Inc.*, 803 F.2d 1130, 1133 (11th Cir.1993)). Accordingly, the Court moves on to a discussion of the excusable neglect standard only.

1. *Debtors have shown a meritorious defense.*

 To establish a meritorious defense, a general denial of Plaintiff's claims is insufficient. *Id.* at 664. Debtors must make an affirmative showing of a defense that might affect the outcome. *Valdez*, 328 F.3d at 1296. Debtors have done that here. In their amended Motion, Debtors included affidavits alleging facts that, if proved to be true at trial, could result in a judgment in their favor.

 Before addressing the claims individually, the Court first addresses all claims together as they relate to Debtor

---

4. Rule 55(c) is applicable to this Court pursuant to Federal Rule of Bankruptcy Procedure 7055.

5. Rule 60(b) is applicable to this Court pursuant to Federal Rule of Bankruptcy Procedure 9024.

Paula Kay Mathis ("P.K. Mathis"). All of Plaintiff's claims center on Debtor C.W. Mathis's alleged actions or representations in relation to the missing cattle. Specific allegations of misconduct by Debtor P.K. Mathis are not patently included. Yet the inclusion of Debtor P.K. Mathis as a defendant is not surprising: the underlying bankruptcy case is a joint case, and both Debtors are signatories on the promissory notes to Plaintiff. But Debtors argue that Debtor P.K. Mathis should be able to contest Plaintiff's claims on the basis that, at the least, *her* discharge should not be denied. Having alleged that Debtors separated in March 2011 and the cattle were stolen in April 2011, Debtor P.K. Mathis has alleged an additional meritorious defense. Amended Motion, Exh. A & B. If Debtor P.K. Mathis can prove these facts, then she could possibly defeat Plaintiff's claims even if Debtor C.W. Mathis cannot. Thus, these circumstances weigh in favor of allowing Debtor P.K. Mathis to litigate her defenses.

■ Turning to Plaintiff's first claim, it seeks to deny Debtors' discharge because Debtors transferred, removed, destroyed, or concealed property of the estate, or allowed such actions to occur. 11 U.S.C. § 727(a)(2)(B). Plaintiff's complaint alleges that Debtors transferred, removed, destroyed, or concealed approximately 500 cattle in Debtors' possession that went missing from Debtors' property sometime after February 1, 2011, during the administration of Debtors' case. Complaint ¶¶ 18–24. Debtors' affidavits allege that the cattle were stolen off their property, that local and state law enforcement were notified, and that local and state law enforcement have not—to Debtors' knowledge—conducted a report of the theft. Amended Motion, Exh. A & B. Debtors do not offer extensive evidence to support how a theft of the cattle occurred. None-

theless, Debtors appeared and alleged facts on the record that could defeat Plaintiff's first claim.

■ Plaintiff's second claim is that Debtors have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information from which Debtors' information or business transactions could be ascertained. 11 U.S.C. § 727(a)(3). Plaintiff alleges facts that Debtors concealed, destroyed, or falsified recorded information regarding their business transactions, especially the maintenance and sale of cattle. Complaint ¶¶ 10–21. Based on the facts alleged by Plaintiff, this claim centers on the missing cattle that secured Plaintiff's loan to Debtors. Plaintiff has not given specific instances of missing information or records. Having alleged that no sale of cattle occurred and that the cattle were stolen, Debtors have offered a defense that could defeat Plaintiff's second claim. Amended Motion, Exh. A & B.

■ Plaintiff's third claim is that Debtors knowingly and fraudulently made a false oath or account. 11 U.S.C. § 727(a)(4)(B). Plaintiff alleged facts that Debtors' reported 560 cattle on Schedule B, that the cattle have inexplicably disappeared, and that Debtors have not truthfully accounted for the cattle's disappearance. Complaint ¶¶ 19–21, 24. Debtors have alleged facts that could defeat this claim. Amended Motion, Exh. A & B.

■ Plaintiff's fourth claim is that Debtors have failed to satisfactorily explain any loss of assets or deficiency of assets to meet Debtors' liabilities. 11 U.S.C. § 727(a)(5). Plaintiff alleged facts that Debtors' reported 560 cattle on Schedule B, but that the majority of these cattle are no longer in Debtors' possession. Complaint ¶¶ 19–21, 24. In their affidavits, Debtors alleged that the cattle were

stolen and that they contacted local and state law enforcement. Regarding the December 2010 sale of cattle, Debtors alleged that the sale was never held because the buyer backed out due to concerns over Debtors' bankruptcy. Amended Motion, Exh. A & B. While Debtors have not offered extensive evidence on the canceled sale or the theft of cattle, Debtors have nonetheless alleged facts that, if proved to be true, could defeat this claim. *Id.*

Plaintiff's fifth claim is that Debtors have refused to obey lawful orders of this Court. 11 U.S.C. § 727(a)(6)(A). Plaintiff has alleged facts that Debtors failed to obey a cash collateral order by not remitting proceeds from the sale of cattle to Plaintiff, or by not otherwise explaining the status of any sales and the assets to be sold. Complaint ¶¶ 13–14. Debtors allege that the only scheduled sale never occurred, which, if true, would be a meritorious defense. Plaintiff has further alleged facts that Debtors failed to obey a January 27, 2011 Order requiring Debtors to cooperate with Plaintiff and its agents in inspecting, inventorying, preserving, or recovering assets in which Plaintiff held a security interest. Complaint ¶ 15. The only facts in Plaintiff's Complaint that support this claim relate to the disappearance of the cattle. Because Debtors alleged facts that the cattle were stolen, Debtors have offered a defense to this claim. Amended Motion, Exh. A & B.

In sum, Debtors filed affidavits on the record alleging facts that, if proved to be true, could lead to a judgment in their favor. Accordingly, Debtors have met the requirement that they set forth a meritorious defense.

2. *Plaintiff is not substantially prejudiced.*

Prejudice to the nonmoving party does not exist merely because a trial, with its attendant delays and costs, must be held on the merits after the default judgment is set aside. *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 785 (8th Cir.1998). But the absence of prejudice is not sufficient in itself to warrant relief from a default judgment. *Valdez,* 328 F.3d at 1297. For example, when a party fails to "make even the barest showing of a meritorious defense or to present a good reason for failing to respond," the absence of prejudice does not automatically tip the scales in favor of the defaulting party. *Id.* The absence of prejudice must be considered with all other factors. *Id.*

Here, River City Bank is prejudiced to some extent in the delay in pursuing its § 727 objection to discharge. The delay here is not that a trial will have to be completed. The delay is the six months that passed since Debtors were served with the complaint and their appearance. Because Debtors failed to appear until late October 2011, Plaintiff was unable to complete discovery that would have been helpful in prosecuting its complaint. Debtors have therefore frustrated the efficient administration of the judicial process by delaying the discovery process. Nonetheless, this prejudice to Plaintiff is minor, not substantial. Further, the Court notes that Plaintiff was not in haste to reach a default judgment against Debtors—the Court had to direct Plaintiff to file a motion for default judgment approximately six weeks after default was entered. The prejudice to Plaintiff is therefore minor.

3. *Debtors possess a good reason for failing to timely answer the Complaint.*

Though they are not without fault, Debtors do possess a good reason for failing to timely answer the Complaint. Debtors' first reason for failing to timely file an answer is that Mr. Bone allegedly

agreed to file an answer on their behalf, and he did not do so. Record of hearing on October 19, 2011. While Mr. Bone's Rule 2016 fee disclosure provides that representation in adversary proceedings is not included under the base legal fee, that does not fully excuse his failure to file an answer. *In re Egwim,* 291 B.R. 559 (Bankr.N.D.Ga.2003) (holding that debtor's counsel may not limit scope of representation to exclude adversary proceedings absent special circumstances). But because Mr. Bone appeared and filed answers on behalf of Debtors in the other adversary proceedings, it was not unreasonable for Debtors to believe that Mr. Bone would do so here.

Despite Debtors' belief that Mr. Bone would file an answer on their behalf, the ultimate responsibility for the default still rests with Debtors. First, the Supreme Court has held that clients are responsible for the actions of their counsel. *Raynard,* 171 B.R. at 702 (quoting *Pioneer,* 507 U.S. at 396, 113 S.Ct. 1489). Second, Debtors were notified by letter of Mr. Bone's intent to withdraw as counsel in all cases on May 3, 2011. And Debtors were notified by Order of this Court that Mr. Bone was allowed to withdraw as counsel on June 15, 2011. By that date, Debtors were on notice that the responsibility for keeping up with deadlines and making appropriate filings in their cases was their own.

Yet Debtors failed to file an answer until approximately six months after the complaint was served and three months after default was entered. Debtors' second reason for failing to respond timely speaks to this greater failure. Once Debtors knew Mr. Bone did not file an answer, Debtors were unable to hire counsel to file an answer on their behalf. According to Debtors, they could not obtain counsel earlier than October 2011 because they could

not find an attorney who would take on their case.

Of course, Debtors could have filed an answer *pro se,* and some courts have ruled that the failure to answer *pro se* is not excusable neglect. *E.g., In re Belcher,* 293 B.R. 265, 268 (Bankr.N.D.Ga.2001). But those *pro se* parties were generally attorneys representing themselves or were corporations. *Id.* Or, in some instances, the *pro se* parties appeared to take advantage of their *pro se* status to intentionally delay proceedings. *E.g., Devenger v. Forant (In re Forant),* 2003 WL 22247234, *2–3 (Bankr.D.Vt.2003). And while some courts have found that neglecting to hire counsel is not excusable neglect, those cases generally also involve corporate creditors. *E.g., In re Peninsular Oil Corp.,* 399 B.R. 532, 538 (Bankr.M.D.Fla.2008). This case is distinguishable because Debtors, who are individuals, did not merely neglect to hire counsel in time. And they did not choose to wait to hire counsel until after they were in default. According to Debtor C.W. Mathis's statements on the record at the October 19, 2011 hearing, Debtors had attempted to obtain legal counsel in three different cities. Debtors' Motion iterates these same efforts. While Debtors are not without fault in the delay in acquiring counsel, this is not a case where Debtors caused intentional delay or were totally inactive or irresponsible. On the contrary, the circumstances suggest that Debtors encountered, in good faith, difficulty in acquiring legal services.

Debtors also offer a third reason for their failure: the notice of hearing for Plaintiff's motion for default judgment caused Debtors to believe that they had until October 28, 2011 to file a response. Being confused by the notice, however, only explains Debtors' failure to timely respond to the Motion for Default Judgment. But that failure is important here.

Had Debtors not relied on the notice, they may have filed a response to the motion for default judgment before a default judgment was entered. And though Debtors have tardily appeared, the fact remains that they are now before this Court, with counsel, and are ready to litigate the merits of this case. Given the strong judicial policy of deciding cases on their merits, justice would best be accomplished here by setting aside the default judgment.

### 4. *Other relevant circumstances.*

There are other relevant circumstances to consider. First, as noted above, Debtor's counsel in the underlying bankruptcy case should not have provided a limited representation that excluded adversary proceedings.[6] Although Debtors are responsible for the counsel's actions, Debtors' belief that Mr. Bone would file an answer on their behalf was still reasonable, especially given that Mr. Bone had filed answers in the other two adversary proceedings.

Second, as discussed above, Debtor P.K. Mathis has alleged an additional meritorious defense as to her alone. She proffers that she and Debtor C.W. Mathis had separated before the cattle went missing, and that Plaintiff's claims should therefore be directed to C.W. Mathis alone. Because Plaintiff's Complaint does not make specific allegation as to Debtor P.K. Mathis, allowing her to litigate Plaintiff's claims is equitable in these circumstances.

Finally, receiving a discharge is the ultimate goal of bankruptcy. Without a discharge, a consumer debtor is denied the most fundamental benefit of filing a bankruptcy case. Denying this benefit to Debtors by way of a default judgment is a harsh result. Though this harsh result is at times necessary to enforce the orderly administration of cases and the active participation in lawsuits, Debtors have demonstrated that the circumstances here do not warrant such a result. Debtors are now before this Court and prepared to litigate their right to a discharge. Justice is best served by setting aside the Default Judgment and adjudicating this case on the merits.

### 5. *Conclusion*

In the unique circumstances of this case, Debtors have shown excusable neglect. First, Debtors allege sufficient reasons for not timely answering the complaint. Debtors believed their counsel of record in their other cases would file an answer. When that did not happen, Debtors proffer that they sought to obtain new counsel, acting in good faith and without the intent to delay these proceedings. And Debtors only barely missed filing a response to the Motion for Default Judgment before a default judgment was entered, further showing their efforts to appear and litigate this case. Second, Debtors set forth potentially meritorious defenses to Plaintiff's claims. Third, the prejudice to Plaintiff in setting aside the default judgment is minor. Consequently, justice would be done in this particular case by allowing the Debtors to litigate Plaintiff's claims in an attempt to avoid the harsh result of their discharge being denied. Accordingly, it is

**ORDERED** that Debtors' Motion to Set Aside The Judgment Denying Debtors' Discharge And For Reconsideration of Order Granting Default Judgment is **GRANTED.** It is

**FURTHER ORDERED** that the entry of default and default judgment are **VACATED.** It is

---

**6.** The presence of special circumstances is an exception to this rule. Nothing in the facts now before the Court suggests special circumstances existed.

**FURTHER ORDERED** that the Court will hold a status conference in this case at 9:25 a.m. on February 15, 2012, at 600 East First Street, Room 342, Rome, Georgia 30161. The Court will set the other two adversary proceedings involving Debtors for status conference at the same time and date.

The Clerk of Court shall serve a copy of this Order on Plaintiff, counsel for Plaintiff, Defendants, counsel for Defendants, the Chapter 7 Trustee, and the U.S. Trustee.