# Supreme Court of Texas

No. 21-0124

Stephen L. Mitchell, Janie Mitchell Belew, Lisa Mitchell
Seigmann, and Linda Mitchell Stapleton,

*Petitioners*,

v.

MAP Resources, Inc., Pecos Bend Royalties, LLP, PBR Properties
Joint Ventures, and Tommy Vascocu,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued February 22, 2022**

JUSTICE BUSBY delivered the opinion of the Court.

Elizabeth S. Mitchell owned a mineral interest in property in
Reeves County, and she died in 2009. Her heirs, the petitioners, sued to
declare void a 1999 default judgment foreclosing a tax lien on Elizabeth's
interest, alleging that she was not properly served with notice of the
underlying foreclosure suit and thus the judgment violated her
constitutional right to procedural due process. The taxing authorities

that brought the foreclosure suit served Elizabeth and almost 500 other defendants by posting citation on the courthouse door.

Elizabeth's heirs contend that she should have been served personally because her name and address were available in eight publicly recorded warranty deeds and in the county's tax records. Respondents, the current owners who purchased the property at a tax sale or later acquired an interest in it, reply that those deeds and records cannot be considered in this collateral attack on the foreclosure judgment because they are outside the record of the underlying suit.

The trial court granted summary judgment for the current owners, ordering that the heirs take nothing. A divided court of appeals affirmed, holding the heirs did not conclusively establish a violation of Elizabeth's due process rights and declining to consider the warranty deeds because of the bar on extrinsic evidence in collateral attacks.

There are two questions before us: (1) can information available in relevant public records be considered in a collateral attack on a judgment that alleges constitutional due process violations; and (2) if those records are considered here, were Elizabeth Mitchell's due process rights violated in the 1999 suit? We answer both questions yes. When public property or tax records include contact information for a defendant that was served by publication, we hold that a court hearing a collateral attack on a judgment on due process grounds may consider those records. And because the deed records here featured Elizabeth's mailing address, we hold that serving her by posting did not comply with procedural due process. Accordingly, we reverse the court of appeals' judgment, render partial summary judgment for the heirs, and remand

the case to the trial court for further proceedings regarding certain of the current owners' defenses.

## BACKGROUND

As the concurring justice in the court of appeals observed, "to anyone who values property rights and due process, the facts of this case are troubling." 615 S.W.3d 212, 224 (Tex. App.—El Paso 2020) (Alley, C.J., concurring). In December 1998, the Pecos-Barstow-Toyah Independent School District, Reeves County Hospital District, and Reeves County (collectively the Taxing Authorities) sued approximately 500 owners of more than 1600 parcels of mineral property—totaling tens of thousands of acres—who had failed to pay their property taxes.[1] To notify the defendants that they had been sued, the Taxing Authorities posted citations on the door of the Reeves County Courthouse.

Citation by posting was necessary, the Taxing Authorities swore, because not one of the 500 defendants could be located for personal service despite the Authorities' allegedly diligent search. Roughly one month, two attorneys ad litem, and a five-minute bench trial later, the court signed a default judgment foreclosing tax liens on all 1600 parcels, including mineral interests in 320 acres owned by Elizabeth S. Mitchell (misidentified in the defendant list as "Elizabeth A. Mitchell"). Sixteen

---

[1] The original petition by the Taxing Authorities does not name the defendants individually. Instead, it incorporates an attached exhibit listing the mineral leases and their owners. The list is arranged alphabetically by owner first name and spans 55 pages in the record. Strangely, starting on page 29 of the list, it begins to repeat itself. Every subsequent page is a duplicate of a prior page, although the order is not the same. Our review of the first 28 pages of the list, before the entries duplicate, revealed roughly 500 unique owners, 80 owners identified only as "unknown," and 1600 parcels of property.

3

years later, Elizabeth's heirs brought suit to have the 1999 judgment and subsequent sale set aside for constitutional due process violations.

### A.    The tax suit and 1999 foreclosure judgment

The Taxing Authorities' original suit sought to foreclose tax liens on mineral interests whose owners had not paid their taxes at some point between 1978 and 1998.  Several months after filing their original petition with an attached exhibit listing all defendants and properties, the Taxing Authorities' attorney filed an affidavit seeking court approval for citation by posting under Texas Rule of Civil Procedure 117a.[2]  Tracking the requirements of Rule 117a, counsel said in part that each defendant listed in the exhibit was either a nonresident, absent from the state, or a transient person.  Additionally, he said that the names or residences of the other landowners involved in the suit were unknown and could not be ascertained after diligent inquiry.  Counsel further swore that, for any defendants for whom a rendition was filed in the previous five years with the appraisal district office that showed the address of any record owner, personal service was issued to

---

[2] Rule 117a(3) provides:

> Where any defendant in a tax suit is a nonresident of the State, or is absent from the State, or is a transient person, or the name or the residence of any owner of any interest in any property upon which a tax lien is sought to be foreclosed, is unknown to the attorney requesting the issuance of process or filing the suit for the taxing unit, and such attorney shall make affidavit that such defendant is a nonresident of the State, or is absent from the State, or is a transient person, or that the name or residence of such owner is unknown and cannot be ascertained after diligent inquiry, each such person in every such class above mentioned, together with any and all other persons . . . may be cited by publication.

4

the rendition address. The record contains no citation or return of attempted service on any defendant listed in the exhibit.

The court took the Taxing Authorities at their word and authorized citation by posting. On December 17, 1998, the exhibit and a two-page notice to defendants were provided to the Reeves County Sheriff's Office and posted at the county courthouse. The notice required defendants to appear and answer the suit within 42 days, by January 31, 1999. *See* TEX. R. CIV. P. 114.

Also on December 17, the Taxing Authorities filed a motion to appoint an attorney ad litem for the defendants who had not appeared or answered. *See* TEX. R. CIV. P. 244. The Court appointed Roddy Harrison, who withdrew two months later, on February 10, 1999, due to conflicts. The next day, the court appointed a new attorney ad litem, Jesse Gonzalez, Jr. At that time, a non-jury trial was scheduled for February 19, 1999. Mr. Gonzalez did not receive the records for the case until February 16, three days before trial.

The trial apparently took less than five minutes.[3] After trial, the court signed a Statement of Evidence—to which the attorney ad litem agreed—reciting that the court had inquired into the sufficiency of the diligence exercised by the Taxing Authorities in attempting to discover the whereabouts of defendants. *See id.* According to the statement, the Taxing Authorities' witness testified to a search of the public records of

---

[3] The record indicates that six other tax delinquency suits were scheduled for trial at the same time as the suit at issue here, each with a different defendant or attorney ad litem. Trying all seven cases was estimated to take thirty minutes. Assuming each case received roughly the same amount of time, that would allow about four minutes per case.

the county, and that, where the records showed an address for a defendant, "citation was issued for personal service . . . at such address . . . but was unserved." The court concluded that diligent inquiry had been made and signed a default judgment foreclosing the Taxing Authorities' liens on the subject properties. The properties, including Elizabeth's mineral interests, were then sold at a sheriff's sale.

### B. The Mitchell heirs' 2015 suit

Elizabeth's heirs (collectively the Mitchells) filed the present suit in 2015—five years after Elizabeth's death and sixteen years after the foreclosure judgment—against respondents, MAP Resources and other current owners of the mineral interests (collectively MAP). The Mitchells sought declarations that the foreclosure judgment was void as to Elizabeth because she had not been properly served and thus her federal and state constitutional rights had been violated. Specifically, they alleged that the attorney for the Taxing Authorities gave false testimony that Elizabeth's address could not be ascertained after diligent inquiry because eight warranty deeds on file in the public records at the time of the foreclosure suit showed that Elizabeth owned the subject property and listed a post office box where she could be reached.[4] They contended that if the Taxing Authorities had actually conducted the diligent inquiry they claimed, Elizabeth's address would have been discovered in the deed records.

---

[4] All eight warranty deeds are included in the record before us in this 2015 suit. Each deed was filed in 1983, names Elizabeth S. Mitchell as the grantee of the property, and lists as Elizabeth's address "P.O. Box 428, Van Horn, Texas 79855."

The parties filed cross-motions for summary judgment in the trial court. The Mitchells' motion argued that the foreclosure judgment is void as to Elizabeth and her property because the Taxing Authorities, despite having knowledge of her address, failed to serve her in compliance with Texas Rule of Civil Procedure 117a and thereby violated both the United States and Texas Constitutions. Because the judgment is void, they contended that the resulting deeds and sales of the property are also void.[5] The Mitchells sought declaratory relief to that effect and to quiet title to the property. As evidence, the Mitchells provided, among other things, copies of the eight publicly recorded warranty deeds, probate documents regarding Elizabeth's estate, and copies of documents from the original foreclosure suit, including the citation by posting, statement of evidence, and default judgment.

In response to the Mitchells' motion, MAP raised a number of defenses, including that the Mitchells failed to comply with certain statutory requirements in the Tax Code. Specifically, MAP argued that the Mitchells' claims are barred by the one-year statute of limitations for challenging tax sales. *See* TEX. TAX CODE § 33.54(a). MAP also contended that the Mitchells failed to satisfy the Tax Code's statutory precondition for suits challenging the validity of a tax sale, which requires deposit of any delinquent taxes before the action may be commenced. *Id.* § 34.08(a). Additionally, MAP argued that the

---

[5] After the judgment, the mineral interests were sold at a sheriff's sale to respondents PBR Properties Joint Ventures, Pecos Bend Royalties, Inc., and Tommy Vascocu, who received a sheriff's deed. That interest was subsequently conveyed in part to MAP Resources via quitclaim deed. The Mitchells seek to have both the sheriff's and quitclaim deeds declared void.

7

Mitchells could not collaterally attack the tax judgment because the statement of evidence established that Elizabeth was properly served, and the Mitchells improperly sought to introduce the warranty deeds despite the bar on extrinsic evidence. Finally, MAP argued that the Mitchells' claims were barred by laches because they unreasonably delayed bringing suit.

MAP also filed its own hybrid motion for summary judgment.[6] Its motion raised many of the same grounds it argued in response to the Mitchells' motion for summary judgment, with the exception of its laches defense. MAP argued in its motion that the Mitchells' claims failed because they did not file within the statutory limitations period or comply with statutory procedure for challenging a tax sale. It also contended that the Mitchells' attempt to attack the judgment

---

[6] Motions for traditional summary judgment under Rules 166a(a) or (b) may be combined with Rule 166a(i) no-evidence motions in "hybrid" motions for summary judgment. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *see also City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (per curiam). If a party has the burden of proof on claims or defenses, however, it cannot use a no-evidence motion to establish those claims or defenses. *See* TEX. R. CIV. P. 166a(i); *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.). MAP's motion sought summary judgment on the grounds that the statutory limitations period in the Tax Code had run, that the Mitchells provided no evidence that the tolling provision of the statute had been triggered, and that the Mitchells' suit was an improper collateral attack. MAP's claim that the Mitchells failed to provide evidence that the Tax Code's tolling provision applied can properly be decided in a no-evidence motion because the Mitchells would have the burden of proving tolling at trial. *See Draughon v. Johnson*, 631 S.W.3d 81, 85 (Tex. 2021) ("If a defendant prefers to place the burden on the plaintiff to raise a fact issue regarding any aspects of limitations on which the plaintiff would have the burden at trial, it is free to file a no-evidence motion for summary judgment as to those matters."). Given our disposition, however, we do not reach the tolling issue.

collaterally was impermissible because they could not demonstrate that the judgment was void on its face. As evidence, MAP provided copies of the record from the foreclosure suit, the sheriff's tax deed to PBR Properties Joint Venture, Pecos Bend Royalties, Inc., and Tommy Vascocu, and the quitclaim deed from those parties to MAP Resources.

In response to MAP's motion, the Mitchells contended that MAP's argument improperly elevates the statutory requirements of the Tax Code over constitutionally mandated due process rights. In their view, accepting MAP's position would essentially foreclose any collateral attack on a judgment where service was constitutionally inadequate. The Mitchells argued they were not barred from bringing their collateral attack because constitutional due process rights trump statutory requirements.

Following a hearing, the trial court granted MAP's motion for summary judgment and denied the Mitchells' motion. The court rendered judgment for MAP and the other defendants and ordered a take-nothing judgment on the Mitchells' claims. The Mitchells appealed.

C.    **The court of appeals' opinions**

The court of appeals affirmed, holding that the Mitchells had not established as a matter of law that the trial court lacked personal jurisdiction over Elizabeth. 615 S.W.3d at 223 (plurality opinion). Each of the three panel members wrote a separate opinion. Justice Palafox wrote a plurality opinion holding that although a judgment may be collaterally attacked on the ground that the court did not acquire personal jurisdiction over the defendant in compliance with due process,

9

the record in this case does not conclusively establish that no attempt was made by the Taxing Authorities to personally serve Elizabeth. *Id.* at 222.

Chief Justice Alley concurred. He concluded that although the record established a due process violation under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), the plurality's outcome was correct in light of Texas precedent barring consideration of extrinsic evidence. He encouraged a reexamination of this precedent, including a possible exception "when a judgment is based on an express representation that a party performed a diligent review of public records to support an alternative form of service." *Id.* at 224 (Alley, C.J., concurring).

Justice Rodriguez dissented, arguing that due process rights should always trump a state statute or evidentiary rule. Because the warranty deeds in the public record created serious doubts that a diligent search for Elizabeth's whereabouts had actually been conducted, she would have set aside the judgment for complete lack of service. *Id.* at 237 (Rodriguez, J., dissenting). As explained below, we agree in part with both the concurrence and the dissent.

The Mitchells filed a petition for review, which we granted. We review the trial court's rulings on the parties' cross-motions for summary judgment *de novo*, considering both sides' summary judgment evidence and determining all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

10

I.     **In a collateral attack on a default judgment, contact information available in deed and tax records may be considered in deciding whether service by posting satisfied due process.**

The Mitchells contend that the default foreclosure judgment should be declared void because Elizabeth was not personally served in compliance with constitutional due process requirements, and thus the court did not acquire personal jurisdiction over her. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012) (holding that "a judgment may . . . be challenged [as void] through a collateral attack when a failure to establish personal jurisdiction violates due process"). The parties' principal dispute concerns what evidence a court may consider in deciding whether Elizabeth was properly served by posting. To place this dispute in context, we begin by discussing the service requirements of the Constitution and our rules.

Texas Rule of Civil Procedure 117a governs the service of citation on defendants in suits for delinquent ad valorem taxes. To justify citation by publication or posting when a defendant is a nonresident of or absent from the state, or its name is unknown to the attorney requesting issuance of process, the attorney must aver that the defendant is absent, transient, or that its name and residence "cannot be ascertained after diligent inquiry." TEX. R. CIV. P. 117a(3). The "diligent inquiry" requirement of Rule 117a incorporates the requirements of constitutional due process.

The Due Process Clause of the United States Constitution prevents the government from depriving a person of his or her "property,

without due process of law." U.S. CONST. amend. XIV, § 1; *see also* TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of . . . property . . . except by the due course of the law of the land.").[7] It is well settled that these words "require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane*, 339 U.S. at 313. Notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (quoting *Mullane*, 339 U.S. at 314).[8]

In *Mullane,* the Supreme Court of the United States explained that "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315. The reasonableness of any chosen method of

---

[7] This Court has held that the federal Due Process Clause and the Texas Constitution's Due Course of Law clause are, for the most part, coextensive. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 86 (Tex. 2015). The parties have not identified any differences in text or application that are relevant to the issues raised here, so we treat the requirements of both Constitutions as identical for purposes of this opinion.

[8] *See also Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[P]rocedural due process 'requires notice that is reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.'" (quoting *City of Waco v. Roddey*, 613 S.W.2d 360, 365 (Tex. App.—Waco 1981, writ dism'd))); *Hamm v. Robinson*, 314 S.W.3d 204, 209 (Tex. App.—El Paso 2010, no pet.) ("As an elementary and fundamental requirement, our system of justice comprehends due process to include notice and an opportunity to be heard by interested parties to the action.").

12

providing notice, and hence its constitutionality, "may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* (citations omitted).

This Court echoed *Mullane* in *Anderson v. Collum*, a case concerning the validity of service by publication under Rule 117a. 514 S.W.2d 230 (Tex. 1974). We held that where property owners were residents and could have been found with diligent inquiry, and where the state's affidavit for citation by publication alleged only that the owner was a nonresident or person whose residence was unknown, the tax sale should be set aside. *Id.* at 230–31. "[T]he failure to comply with [Rule 117a], and the admitted lack of diligence to locate the defendants renders the service by publication ineffective." *Id.* at 231; *see also Sgitcovich v. Sgitcovich*, 241 S.W.2d 142, 147 (Tex. 1951).

We have not considered service under Rule 117a since *Anderson*, but when we have discussed the requirement of diligent inquiry as it relates to citation by publication, we have done so with reference to the due process considerations outlined in *Mullane*. *See In re E.R.*, 385 S.W.3d 552, 558–60, 565 (Tex. 2012) ("Sending a few faxes, checking websites, and making three phone calls . . . is not the type of diligent inquiry required before the [State] may dispense with actual service . . . . *Mullane* authorized service by publication when it is not reasonably possible or practicable to give more adequate warning." (internal quotation marks omitted)). Rule 117a's requirement of a diligent inquiry into the whereabouts of a defendant in a tax foreclosure suit

13

ensures that a party seeking to serve a defendant by publication or posting has provided process that is more than a mere gesture.

A diligent inquiry by a person who actually desires to find a defendant in a tax suit includes a search of public property and tax records. Following *Mullane*, the Supreme Court has consistently held that when an unknown defendant can be identified or a known defendant's address can be ascertained from publicly recorded instruments, notice by posting or publication is insufficient to satisfy due process. In *Walker v. City of Hutchinson*, the Court held that notice of condemnation proceedings published in a local newspaper was an inadequate means of informing a landowner whose name was known to the city and was on its official records. 352 U.S. 112, 116 (1956). "[T]here seem to be no compelling or even persuasive reasons," the Court wrote, "why such direct notice cannot be given." *Id.* A few years later, in *Schroeder v. City of New York*, the Court reaffirmed that publication in newspapers and posted notices was inadequate to apprise a property owner of condemnation proceedings when his name and address were ascertainable from deed records and tax rolls. 371 U.S. 208, 210–11 (1962).

The Court returned to this issue twenty years later in *Mennonite Board of Missions v. Adams*, addressing whether notice by publication and posting provided a mortgagee of real property with adequate notice of a nonjudicial proceeding to sell the mortgaged property to recover delinquent taxes. 462 U.S. at 792. The Court held that a mortgagee has a legally protected property interest and is therefore entitled to notice that is reasonably calculated to apprise her of an impending tax sale.

14

*Id.* at 798. Further, when a mortgagee is identifiable through an instrument "that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Id.* "Personal service or mailed notice is required even though sophisticated [defendants] have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are likely to be initiated." *Id.* at 799. Only when a mortgagee is "not reasonably identifiable" does constructive notice alone satisfy the requirements of *Mullane*. *Id.* at 798.

In light of these principles, we likewise hold that citation by publication or posting violates due process when the address of a known defendant is readily ascertainable from public records that someone who actually wants to find the defendant would search. *See E.R.*, 385 S.W.3d at 564 (explaining that reasonable search "must extend to places where information is likely to be obtained and to persons who, in the ordinary course of events, would be likely to have information of the person or entity sought" (quoting *In re S.P.*, 672 N.W.2d 842, 846 (Iowa 2003))). Here, the default judgment and the Taxing Authorities' testimony in the foreclosure suit refer to the county's public records, including the deed records. Those records show that if the "diligent inquiry" required by the Constitution and Rule 117a had been performed by a person actually desirous of locating Elizabeth Mitchell, he would have discovered her correct name and post office box in the deed records.

MAP responds that the warranty deeds listing Elizabeth S. Mitchell's name and address cannot be considered under our precedent

15

because they are extrinsic to the record of the underlying foreclosure suit. MAP is correct that, as a general rule, extrinsic evidence cannot be considered in a collateral attack to set aside a final judgment. *See Templeton v. Ferguson*, 33 S.W. 329, 332–33 (Tex. 1895); *Crawford v. McDonald*, 33 S.W. 325, 328 (Tex. 1895). But this rule does not extend to cases over which a court "has not, under the very law of its creation, any possible power." *Templeton*, 33 S.W. at 332. In *York v. State*, we observed that the law of Texas courts' creation includes the United States Constitution. 373 S.W.3d 32, 42 (Tex. 2012); *see also Burnham v. Superior Court*, 495 U.S. 604, 608–09 (1990) (invoking principle of *coram non judice* in determining validity of judgment challenged for alleged lack of personal jurisdiction).

As explained, the Constitution requires a diligent inquiry into a defendant's whereabouts, including a search of public deed and tax records for the defendant's address. Moreover, the concerns that animate this and other courts' application of the bar on extrinsic evidence—such as fraud, manipulation, and fading memories[9]—are inapplicable to such records. The authenticity of the deed and tax records is not in question here.

Because the Constitution and Rule 117a require a plaintiff to consult public deed and tax records as part of its diligent inquiry when

---

[9] "To permit impeachment of a judgment by extrinsic evidence opens the possibility of fraudulent avoidance of judgments, for example by a claim that process was not actually served. The testimony of a person making such a claim often cannot be contradicted, because the memory of other possible witnesses has faded by the time the claim is litigated." RESTATEMENT (SECOND) OF JUDGMENTS § 77 cmt. b (1982).

a defendant's name or residence is unknown, the contents of those records should be regarded as part of the record of the suit rather than as extrinsic evidence. We therefore hold that when such public records contain the address of a defendant served by publication or posting, a court hearing a collateral attack on a judgment may consider that evidence in deciding whether service complied with the constitutional demands of due process.

## II. Consideration of the deed records demonstrates that serving the defendant by posting did not comply with procedural due process.

Having defined the scope of the record, we next consider whether it establishes a jurisdictional defect. *See PNS Stores*, 379 S.W.3d at 273. Although a judgment attacked collaterally is presumed valid, that presumption disappears when the record "exposes such personal jurisdictional deficiencies as to violate due process." *Id*.

Here, the record shows that the Taxing Authorities did not comply with Rule 117a or the requirements of due process. As explained above, due process requires notice that is reasonably calculated to apprise parties of the pendency of an action. Personal service of written notice is always adequate, but notice by publication must be scrutinized because "chance alone" brings a resident's attention to a notice published in a newspaper or posted on a courthouse door. *Mullane*, 339 U.S. at 315. Thus, notice by publication is not enough with respect to a person whose name or address is easily ascertainable; such persons should be served personally. *Schroeder*, 371 U.S. at 212–13; *Sgitcovich*, 241 S.W.2d at 147.

17

There is no evidence that personal service on Elizabeth was ever attempted. The record of the underlying tax foreclosure suit does contain a statement of evidence as required by Texas Rule of Civil Procedure 244.[10] The statement recites that where the Taxing Authorities' search of public records showed the address of any defendant, "citation was issued for personal service . . . at such address . . . but was unserved." But the statement does not address whether an attempt was made to serve the issued citation, and the record contains no citation or return reflecting attempted personal service on any of the 500 defendants, including Elizabeth.

The parties dispute whether our Rules of Civil Procedure required that records of attempted personal service be filed with the court in 1999, at the time of the foreclosure suit. The version of Rule 107—entitled "Return of Service"—then in effect provided: "The return of the officer or authorized person executing the citation shall be endorsed on

_____

[10] MAP argues that the Mitchells have not produced a complete record of the foreclosure suit and that this failure is fatal to their collateral attack. Specifically, MAP points out that the Mitchells failed to produce a transcript of the testimony of the attorney for the Taxing Authorities that he diligently searched for but could not ascertain the defendants' whereabouts. We find this argument unpersuasive. As the Mitchells point out, the trial court in this suit took judicial notice of the record of the foreclosure suit. Moreover, it is unclear that a reporter's record was taken of the brief default trial in the foreclosure suit. Court reporters are not required to transcribe court proceedings unless a party requests it, *see* TEX. GOV'T CODE § 52.046(a), which Elizabeth could not do because she was not present. Even if a transcript was taken in 1999, court reporters are only required to preserve their notes for three years. *Id.* § 52.046(a)(4). This potential unavailability of transcripts is precisely why Rule 244 requires a statement of evidence. The statement creates a record of the evidence supporting a default judgment arising from notice by publication or posting. We conclude that parties may rely on that statement in lieu of a transcript.

18

or attached to the same; it shall state when the citation was served and the manner of service and be signed by the officer officially or by the authorized person." TEX. R. CIV. P. 107 (1990, amended 2011). It further provided that "when the officer or authorized person has not served the citation, the return shall show the diligence used by the officer or authorized person to execute the same and the cause of failure to execute it, and where the defendant is to be found, if he can ascertain." *Id.* In addition, Rule 25 required then (and requires now) that the clerk's file show, "in brief form, the officer's return on the process." TEX. R. CIV. P. 25.[11]

Thus, if the Taxing Authorities had attempted to serve Elizabeth personally in compliance with our rules, the record of the underlying tax foreclosure suit should reflect it. It does not.[12]

MAP argues that the absence of citations in the record cannot be treated as affirmative proof that the Taxing Authorities did not attempt

---

[11] The parties also dispute the relevance and applicability of Rule 99. Currently, Rule 99 requires that the clerk retain a copy of citation in the court's file. TEX. R. CIV. P. 99. In 1999, Rule 99 did not have this requirement. Given that Rule 107 (both now and in 1999) requires retention of copies of the return, however, consideration of Rule 99 is unnecessary to resolve the issue.

[12] We have held that it is "the established law of this State that it is imperative and essential that the record affirmatively show a strict compliance with the provided mode of service." *McKanna v. Edgar*, 388 S.W.2d 927, 929 (Tex. 1965). Specifically, we have held that a failure to comply with the requirements of Rule 107 renders a default judgment invalid. *Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007) (per curiam). In *Hubicki*, we held that the respondent's failure to establish return of service in compliance with the requirements of Rule 107 rendered service ineffective. *Id.* "Under these circumstances, as a matter of law, Festina failed to establish that alternative service . . . was reasonably calculated to provide Hubicki with notice of the proceedings." *Id.*

personal service. We have noted that "unless the party contesting service presents a preponderance of evidence to the contrary—for example, the party's testimony along with corroborating facts or circumstances—the officer's return of service is sufficient proof that the citation and petition were properly served." *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 648 (Tex. 2001). Citations are also treated as presumptive evidence of service, unless the party challenging service carries its burden of showing, by a preponderance of the evidence, that service was not effected. *Ward v. Nava*, 488 S.W.2d 736, 738 (Tex. 1972). These principles do not apply here, however, because no citation or return for Elizabeth appears in the record.

Because Elizabeth was not personally served, constitutional principles of due process and Rule 117a required the Taxing Authorities to conduct a diligent inquiry regarding her residence before serving her by posting. *See supra* Part I. The statement of evidence reflects the testimony of the Taxing Authorities' counsel that public records were searched for the defendants' addresses, and counsel stated in his affidavit that the names and residences of the defendant owners being served by publication could not be ascertained after diligent inquiry. But the assertion that not one of the approximately 500 defendants had an identifiable address strains credulity. And the recorded warranty deeds bearing Elizabeth's post office box address reveal that, as to her, the Taxing Authorities either did not complete the diligent records search they claimed or did not act on its results. Thus, the recitation in the judgment that the Taxing Authorities exercised diligence "rings

hollow," as Chief Justice Alley observed. 615 S.W.3d at 230 (Alley, C.J., concurring).

MAP argues that a post office box is not a "residence," so "proof that the taxing entities were aware of [Elizabeth's] P.O. Box does not negate their lawyers' statement that her *residence* was unknown, which is all Rule 117a requires for citation by publication." This argument is beside the point. "[O]ne desirous of actually informing" Elizabeth of the suit could simply have sent notice to her post office box. *Mullane*, 339 U.S. at 315. There is no evidence that the Taxing Authorities did so here.

When the record underlying the tax foreclosure judgment, including the eight warranty deeds, is considered in its entirety, it demonstrates that the Taxing Authorities' service of Elizabeth by posting was insufficient to satisfy the requirements of due process. Consequently, we hold that the court handling the tax foreclosure suit did not have personal jurisdiction over Elizabeth. *See PNS Stores*, 379 S.W.3d at 273 (holding that the "record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it . . . exposes such personal jurisdictional deficiencies as to violate due process").[13]

---

[13] MAP argues that, as in *PNS Stores*, any defect in service on Elizabeth was "merely technical." We disagree. The defendant in *PNS Stores* was personally served; the defects involved failures to comply with all of the requirements of Rules 106 and 107, including, among other things, failure to list the exact time service was performed and failure to state that PNS was served through its registered agent. 379 S.W.3d at 273–74. Here, as explained above, there is no evidence that Elizabeth was personally served.

**III.     None of MAP's counterarguments or defenses that are properly presented provide a basis for affirming the summary judgment.**

MAP contends that even if the foreclosure judgment violated due process, that judgment should not be declared void given the various other counterarguments and defenses it raised below. These include that the Mitchells' suit is barred by the Tax Code's statute of limitations and that the Mitchells failed to satisfy the Tax Code's preconditions for bringing suit to challenge a tax judgment. We address each of these arguments in turn.

The Tax Code provides that an action relating to title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced "before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record." TEX. TAX CODE § 33.54(a)(1). The one-year limitation is inapplicable if a party is not served with citation in the suit to foreclose the tax lien and continues to pay taxes on the property in question during the limitations period and until the commencement of the action challenging the validity of the tax sale. *Id.* § 33.54(b).

For several reasons, the statute of limitations does not bar the Mitchells' suit here. First, state statutory requirements must give way to constitutional protections. *E.R.*, 385 S.W.3d at 566 (Texas rules "must yield to contrary precedent from the U.S. Supreme Court"). The Taxing Authorities' failure to conduct a diligent inquiry into the county records means that their service of Elizabeth by publication violated due process, which is sufficient to void a judgment. *See PNS Stores*, 379 S.W.3d at 273. As we explained in *E.R.*, "[a] complete failure of service

22

deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time." 385 S.W.3d at 566.

Second, a statute of limitations "cannot place a temporal limit on a challenge to a void judgment filed by a defendant who did not receive the type of notice to which she was constitutionally entitled." *Id.* "'[A] judgment entered without notice or service is constitutionally infirm,' and some form of attack must be available when defects in personal jurisdiction violate due process." *PNS Stores*, 379 S.W.3d at 272–73 (quoting *Peralta*, 485 U.S. at 84). Thus, in *Walker v. City of Hutchinson*, the Supreme Court of the United States upheld the petitioner's due process challenge to a condemnation judgment based on insufficient notice even though it was brought outside the thirty-day window for appealing eminent domain awards provided by state statute. 352 U.S. at 114.

Applying these principles to the Texas Tax Code, the U.S. District Court for the Southern District of Texas has held that section 33.54's limitations period did not bar a mortgagee's quiet-title suit. *See Ocwen Loan Servicing, LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584, 594 (S.D. Tex. 2015). Relying on *Mennonite* and *E.R.*, the district court concluded that a nonjudicial tax foreclosure and sale was void because the mortgagee had not received constitutionally adequate notice, and therefore its suit was not subject to the limitations period in the Tax Code. *Id.* The court echoed the Supreme Court's observation in *Peralta* that "[w]here a person has been deprived of property in a manner contrary to the most basic tenets of due process, . . . only wip[ing] the

23

slate clean . . . would . . . restore[] the petitioner to the position he would have occupied had due process of law been accorded to him in the first place." *Id.* at 592 (quoting *Peralta*, 485 U.S. at 86–87).

Finally, although MAP is correct that neither Elizabeth nor her heirs have triggered the statute's tolling provision, that fact is irrelevant because the Mitchells' suit is a "proper collateral attack, independent of the Tax Code, based on a violation of its due process rights that render[ed] the tax judgment and tax sale void." *Sec. State Bank & Tr. v. Bexar County*, 397 S.W.3d 715, 724 (Tex. App.—San Antonio 2012, pet. denied).

MAP next argues that this suit is barred by the Tax Code's requirement that "[a] person may not commence an action that challenges the validity of a tax sale under [Chapter 34] unless the person: (1) deposits into the registry of the court an amount equal to the amount of delinquent taxes, penalties, and interest specified in the judgment of foreclosure . . . plus all costs of the tax sale, or (2) files an affidavit of inability to pay." Tex. Tax Code § 34.08(a). Requiring a deposit before a tax sale may be challenged is a reasonable method of deterring frivolous claims. But the Legislature's legitimate interest in collecting taxes and preventing meritless challenges to tax suits must accommodate a property owner's constitutional right to due process, which we have held was violated here.

The Mitchells argue that section 34.08 does not bar a collateral attack based on constitutionally infirm notice. Our courts of appeals

24

have divided on this question.[14]   We conclude that a due process violation occurring after an owner fails to pay taxes on its property does not excuse the owner from having to deposit those taxes in order to pursue a suit to recover the property.   On the other hand, an owner deprived of due process is entitled to notice of the amount to be deposited and an opportunity to make the deposit or file an affidavit before its suit is dismissed.   *Cf. John K. Harrison Holdings, LLC v. Strauss*, 221 S.W.3d 785, 789 (Tex. App.—Beaumont 2007, pet. denied) (holding that defendant's challenge to tax sale was barred by section 34.08 because court provided him an opportunity to satisfy the deposit requirement and he did not do so).   Because MAP's summary judgment evidence does not conclusively establish the amount of the required deposit (including any costs of sale) and that the Mitchells failed to deposit that amount

---

[14] Some courts have rejected the argument that section 34.08's prerequisites are inapplicable to a collateral attack based on a lack of due process.   *E.g.*, *Avni v. JPAD Holdings, LLC*, No. 4:18-CV-3119, 2020 WL 10762198, at *4 (S.D. Tex. Mar. 30, 2020) (granting summary judgment on ground that plaintiff challenging tax foreclosure failed to satisfy section 34.08's prerequisites); *Roberts v. T.P. Three Enters., Inc.*, 321 S.W.3d 674, 677 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Having failed to comply with [section 34.08], appellants were barred from commencing their action challenging the validity of the tax sale.").   But other courts considering the relationship between section 34.08's requirements and due process challenges have indicated that a failure to satisfy 34.08 does not bar a challenge based on insufficient notice.   *Sec. State Bank*, 397 S.W.3d at 722–23 (holding that a lienholder's failure to comply with section 34.08 did not preclude it from challenging a tax sale because the record established a "complete lack of notice" violative of due process); *cf. Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 525 (Tex. App.—Fort Worth 2015, pet. denied) (holding that party's failure to comply with 34.08 was inexcusable because "at no point in this series of circumstances was [it] ever deprived of a due process right, i.e., the opportunity to avail itself of statutory remedies to challenge the sale").

when given the opportunity, we cannot affirm the summary judgment for MAP based on section 34.08. This issue remains open for further consideration on remand.

Finally, we cannot resolve MAP's laches defense in this appeal. MAP did not raise its laches defense in its motion for summary judgment, but only in its response to the Mitchells' motion for summary judgment. Nor did the Mitchells move for summary judgment against MAP on laches. Thus, in granting MAP's motion for summary judgment, the trial court did not address MAP's laches defense.

A motion for summary judgment must "state the specific grounds therefor," and "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). In an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to and considered by the trial court. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675–77 (Tex. 1979). A summary judgment cannot be affirmed on a ground not specifically presented in the motion. *Travis v. City of Mesquite*, 830 S.W.2d 94, 99–100 (Tex. 1992). Thus, the laches defense also remains open for further consideration on remand.

Although we take no position on whether laches or any other equitable doctrine can provide a valid defense to a notice-based collateral attack on a judgment transferring property, we note that our holding above regarding limitations does not necessarily resolve the issue. In *E.R.*, which addressed a judgment terminating parental rights, we held that "the statute's time limits cannot foreclose an attack by a

26

parent who was deprived of constitutionally adequate notice." 385 S.W.3d at 567. Rather, "[a] void judgment . . . can be collaterally attacked at any time." *PNS Stores*, 379 S.W.3d at 272. Many jurisdictions have applied this principle to conclude that laches does not generally provide a basis for refusing relief from a void default judgment.[15]

Yet *E.R.* also concluded that "[i]f, after learning that a judgment has terminated her rights, a parent unreasonably stands mute, and granting relief from the judgment would impair another party's substantial reliance interest, the trial court has discretion to deny

---

[15] *See, e.g.*, *Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002); *United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir. 2000) ("[N]early overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment because of its status as a nullity; thus laches is no bar to recourse . . . ."); *Katter v. Ark. La. Gas Co.*, 765 F.2d 730, 734 (8th Cir. 1985); *Raymond v. Raymond*, 36 S.W.3d 733, 738 (Ark. 2001) (holding laches defense was misplaced because decree was void *ab initio*, so "the trial court had no jurisdiction or authority to hear the cases in the first place"); *County of San Diego v. Gorham*, 186 Cal. App. 4th 1215, 1229 (Cal. Ct. App. 2010) (observing that "neither laches nor the ordinary statute of limitation may be invoked as a defense against an action or proceeding to vacate . . . a judgment or order" void due to failure of service); *Michels v. Clemens*, 342 P.2d 693, 698 (Colo. 1959) ("A void judgment is vulnerable to a direct or collateral attack regardless of the lapse of time." (quoting *Davidson Chevrolet, Inc. v. City & Cnty. of Denver*, 330 P.2d 1116, 1118 (Colo. 1958))); *In re Adoption of D.C.*, 887 N.E.2d 950, 955 (Ind. Ct. App. 2008) ("[D]ue process protections mandate that there be no time limitations for such a fundamental challenge." (citing *Stidham v. Whelchel*, 698 N.E.2d 1152, 1154–56 (Ind. 1998))); *In re Last Will & Testament of Welch v. Welch*, 493 P.3d 400, 414 (N.M. Ct. App. 2020) ("A judgment which is void is subject to direct or collateral attack at any time." (quoting *In re Estate of Baca*, 621 P.2d 511, 513 (N.M. 1980))); *Altman v. Parker*, 123 N.E.3d 382, 384 (Ohio Ct. App. 2018) ("Laches . . . does not bar a movant seeking relief from a void judgment. The law is well settled that a void judgment is a nullity that may be attacked at any time." (citation omitted)); RESTATEMENT (SECOND) OF JUDGMENTS § 65 cmt. b.

27

relief." 385 S.W.3d at 569 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 66); *see id.* at 568 n.30 (collecting cases from other states holding that laches can prevent party from challenging adoption decree). Other states and federal jurisdictions have reached similar conclusions in both adoption and non-adoption contexts.[16] We noted in *E.R.*, however, that "a judgment debtor's post-judgment diligence may be irrelevant in cases involving a default judgment for money damages." *Id.* at 569.

This case differs from *E.R.* in that the default judgment transfers real property rather than terminating the parent-child relationship or awarding money damages. In addition, the parties bringing the collateral attack here are the heirs of the person deprived of due process. The record is devoid of information regarding how and when they learned of the judgment. On remand, the parties are free to address these legal authorities, identify other relevant authorities for the trial court to consider, and offer evidence of any facts and circumstances relevant to MAP's laches defense.

---

[16] *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 737 (11th Cir. 2014) (holding that although motion to set aside judgment for voidness is generally not subject to a typical laches analysis, "there are limitations on this doctrine . . . [including] that objections to personal jurisdiction (unlike subject matter jurisdiction) are generally waivable" (quoting *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003))); *Abernathy v. Mitchell*, 406 So. 2d 862, 864 (Ala. 1981); *Abushmais v. Erby*, 652 S.E.2d 549, 552 (Ga. 2007) ("That is not to say . . . that there is no defense available to an equitable attack on a void judgment." (first citing *Howington v. Howington*, 637 S.E.2d 389 (Ga. 2006); then citing *Watson v. Watson*, 218 S.E.2d 863 (Ga. 1975))); *cf. Katter*, 765 F.2d at 734 (noting that the principles of Restatement section 66 are "essentially equivalent to those of equitable estoppel").

## Conclusion

Because the Mitchells have established that Elizabeth was not properly served in the 1999 suit and that sections 33.54 and 34.08 of the Tax Code are inapplicable, and MAP has not established any of the grounds on which it moved for summary judgment, we reverse the court of appeals' judgment for MAP. But we cannot render final summary judgment for the Mitchells because MAP's issue regarding the deposit requirement of the Tax Code and its laches defense remain unresolved. We therefore render partial summary judgment that the court hearing the tax foreclosure suit did not acquire personal jurisdiction over Elizabeth because she was not served in compliance with Rule 117a and the requirements of due process, and we remand the case to the trial court for further proceedings.

J. Brett Busby
Justice

**OPINION DELIVERED:** May 13, 2022